**HOMES BY AYRES, et al.,**
**Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

Nos. 85–7185, 85–7190, 85–7218 and 85–7219.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 6, 1986.

Decided July 28, 1986.

Paul Frederic Marx, Newport Beach, Cal., for petitioners-appellants.

William Whitledge, Ann Durney, Dept. of Justice, Washington, D.C., for respondent-appellee.

Before FLETCHER, NELSON, and HALL, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Taxpayers Homes by Ayres, Classic Development Corp., Roger DeYoung Construction Co., and DeYoung Construction Co. petition for review of a Tax Court decision redetermining deficiencies in their federal income taxes for the years 1976, 1977, and 1978. The Internal Revenue Service (IRS) asserted the deficiencies after taxpayers used a last-in-first-out (LIFO) inventory method to calculate their cost of homes sold. The Tax Court held that tract home builders could not use LIFO inventory pricing to determine costs and returned the taxpayers to their prior method of accounting. We affirm.

## I

Taxpayers engage in the construction and sale of large-scale tract housing developments. A typical development consists of 150 houses built in three "phases." For the years in question, taxpayers used an accrual method of accounting to compute their gross income from the sale of houses. Taxpayers capitalized into accounts they characterized as "inventories" the cost of their land held for development and sale, the cost of offsite improvements, and the direct and indirect costs of onsite work-in-process and completed houses.

Taxpayers accounted for their construction costs by accumulating costs for each phase of a subdivision. These costs included direct costs, such as labor, materials, and permits, and indirect costs, such as overhead, payroll taxes, and vehicle operation costs. In the pre-LIFO years, taxpayers would accumulate all direct and indirect costs for the year and then allocate them according to one of three methods to determine the cost of the houses sold in each phase.

One technique for allocating the pool of capitalized costs is the "relative sales value method." This method determines cost of houses sold by multiplying total capitalized costs (costs already incurred plus estimated costs of completion) by the ratio of the selling prices of the houses sold to the estimated selling prices of all houses in the phase. Another technique for cost allocation, called "average cost method," calls for multiplying total capitalized costs by the ratio of the total number of houses sold to the aggregate number of houses to be sold in a phase. Finally, the "square footage method" allocates costs by multiplying total capitalized costs by the ratio of the aggregate square footage of houses sold to the aggregate square footage of all houses to be sold in a phase. All three of these methods comport with generally accepted accounting principles and the IRS admits that they accurately reflect income.

Taxpayers filed an application (Form 970) to use a LIFO inventory method with their returns for the fiscal years 1976, 1977, and 1978. They used LIFO methods with respect to all onsite costs (work-in-process and completed houses) and excluded offsite costs and land held for development from LIFO treatment. Application of the LIFO method was identical to the pre-LIFO accounting method except that an additional computational step was added that resulted in a higher cost of homes sold and therefore less income. LIFO results in lower net income in high inflation years, such as the late 1970's, because the recently inventoried, higher priced goods are offset against current sales. The IRS disallowed the LIFO inventory pricing and asserted deficiencies based on taxpayers' pre-LIFO methods. The Tax Court held that under 26 U.S.C. § 471 (Internal Revenue Code of 1954, as amended, hereafter cited as "I.R.C."), tract home builders could not adopt inventory accounting methods for tax purposes and therefore disallowed LIFO inventory treatment for taxpayers.

## II

■ Whether I.R.C. § 471 permits property other than merchandise to be inventoried for tax purposes is a question of law reviewed *de novo. Cf. Dumdeang v. Commissioner*, 739 F.2d 452, 453 (9th Cir. 1984) (interpretation of term "dependent" in I.R.C. § 152(b)(3) is reviewed *de novo*); *Kerr v. Commissioner*, 326 F.2d 225, 229 (9th Cir.) (interpretation of phrase "essentially equivalent to a dividend" in I.R.C. § 302 is reviewed *de novo*), *cert. denied*, 377 U.S. 963, 84 S.Ct. 1644, 12 L.Ed.2d 735 (1964). However, the Commissioner's determination as to whether inventory accounting clearly reflects income for a particular class of taxpayers should not be set aside unless "clearly unlawful" or "plainly arbitrary." *Thor Power Tool Co. v. Commissioner*, 439 U.S. 522, 532–33, 99 S.Ct. 773, 780–82, 58 L.Ed.2d 785 (1979). Whether the term "merchandise" includes tract homes under I.R.C. § 471 is a question of law reviewed *de novo. Cf. Dumdeang*, 739 F.2d at 453.

## III

Whenever a taxpayer changes accounting methods, the consent of the Commissioner must be obtained. I.R.C. § 446(e). "The Commissioner has broad powers in determining whether accounting methods used by a taxpayer clearly reflect income...." *Commissioner v. Hansen*, 360 U.S. 446, 467, 79 S.Ct. 1270, 1282, 3 L.Ed.2d 1360 (1959). If the Commissioner determines that a particular accounting method does not clearly reflect income, he may compute taxable income under an accounting method which, in his opinion, does reflect income clearly. I.R.C. § 446(b).

■ An exception exists to the general rule that the Commissioner must consent to a change in taxpayer's accounting methods. Taxpayers who regularly keep inventories may convert to LIFO without the Commissioner's approval. Treas.Reg. § 1.472–1(a). The Commissioner's discretion as to an election of LIFO by a taxpayer who regularly keeps inventories "is far more circumscribed than in the case of changes of accounting method generally." *Peninsula Steel Products & Equipment Co. v. Commissioner*, 78 T.C. 1029, 1055 (1982) (footnote omitted); *accord RECO Industries v. Commissioner*, 83 T.C. 912, 929–30 (1984). In this case, taxpayers argue that they maintained inventories in the pre-LIFO years and that therefore they were entitled to convert to a LIFO method as a matter of right under Treas.Reg. § 1.472–1(a). We agree with the Tax Court's holding that tract home developers, as a matter of law, cannot maintain inventories for tax purposes and therefore taxpayers needed the Commissioner's consent prior to changing accounting methods.

Section 471 provides in part that "[w]henever in the opinion of the Secretary the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer on such basis as the Secretary may prescribe...." The Commissioner, as the Secretary's delegate, has promulgated regulations under section 471 which specify when inventory accounting is appropriate for tax purposes. Treasury Regulation § 1.471–1 states that: "In order to reflect taxable income correctly, inventories ... are necessary in every case in which the production, purchase, or sale of merchandise is an income-producing factor." Further regulations under section 471 permit certain taxpayers to take inventories such as securities dealers,[1] farmers,[2] and miners.[3]

Taxpayers argue that section 471 does not limit inventory accounting for tax purposes to cases involving "merchandise" or one of the other exceptions listed in the regulations. In effect, the taxpayers position is that section 471 and the accompanying regulations do not create an exclusive list of situations in which inventory accounting is permissible. Taxpayers con-

---

1.  Treas.Reg. § 1.471–5.

2.  Treas.Reg. § 1.471–6.

3.  Treas.Reg. § 1.471–7.

tend that inventory accounting might be appropriate for other taxpayers so long as inventories clearly reflect income. The taxpayers thus conclude that we should remand this case to the Tax Court to determine whether taxpayers used an inventory method.

We reject taxpayers' interpretation of section 471. The Commissioner has discretion under section 471 to specify when inventories are necessary to reflect income correctly. *W.C. & A.N. Miller Development Co. v. Commissioner*, 81 T.C. 619, 627 (1983). The Commissioner *requires* inventories for taxpayers which produce or sell merchandise under Treas.Reg. § 1.471–1. All other uses of inventory accounting for tax purposes are permissive. We believe that the Treasury implicitly rejected taxpayers' construction of section 471 when it promulgated Treas.Reg. §§ 1.471–5, 1.471–6 and 1.471–7 in 1960. For example, Treas.Reg. § 1.471–6 states, "[a] farmer *may* make his return upon an inventory method instead of the cash receipts and disbursements method." Had the Treasury interpreted section 471 to permit all taxpayers to *choose* the inventory method of accounting, it would not have granted farmers *permission* to do so. *See also* Treas.Reg. § 1.472–1 ("Any taxpayer *permitted* or required to take inventories pursuant to the provisions of section 471....") (emphasis added).

The Commissioner has consistently maintained that real property cannot be inventoried for tax purposes. *W.C. & A.N. Miller Development Co. v. Commissioner*, 81 T.C. 619, 628–29 (citing *Atlantic Coast Realty Co. v. Commissioner*, 11 B.T.A. 416

(1928)); *see also* Rev. Ruling 69–536, 1969–2 C.B. 109. In *Miller*, the Tax Court specifically held that taxpayers who mass produce tract homes on subdivided lots may not inventory the costs of developing those homes. 81 T.C. at 628–29. "It has consistently been held that the costs of improvements to subdivided real estate held for sale are capital expenditures, allocable to the basis of the taxpayer in the various unsold lots." *Id.* at 632; *see* I.R.C. § 263(a); Treas.Reg. §§ 1.263(a)–1(a)(1), 1.263(a)–2(a) & 1.263(a)–2(d). Gain from the sale of property is defined as "the excess of the amount realized therefrom over the adjusted basis." I.R.C. § 1001(a). Section 1012 states that the basis of property is its cost, with some exceptions not relevant to this case. When subdivided lots are sold, "the cost or other basis of the entire property shall be equitably apportioned among the several parts, and the gain realized or loss sustained on the part of the entire property sold is the difference between the selling price and the cost or other basis allocated to such part." Treas. Reg. § 1.616(a). Finally, basis in real estate must be adjusted to reflect the cost of improvements. Treas.Reg. § 1.1016–2(a). Although taxpayers allocate their accumulated costs in a way which resembles an inventory method, there is no basis under the Code or established precedent for the contention that tract homes may be inventoried.[4]

Taxpayers acknowledge that the Commissioner and the courts have refused to allow inventory accounting methods with real estate. They attempt to distinguish

---

**4.** The remedy sought by the taxpayers here, remand to the Tax Court to determine specifically if the taxpayers were using an inventory system during the pre-LIFO years, would be superfluous because the Tax Court already rejected " 'petitioner's contention that capitalization is an inventory method.'" Accordingly, the Tax Court held that *Miller* prohibited home developers from taking inventories and thereby adopting LIFO inventory methods. In reaching this conclusion, the Tax Court stated that this case is "substantially similar" to *Miller* on its facts. Taxpayers argue that in *Miller* the taxpayer failed to prove that an inventory system was in

use and therefore the Tax Court incorrectly relied on *Miller*. The "job cost" accumulation method used in *Miller*, however, bears a close resemblance to the techniques employed by taxpayers. Both methods are capitalization techniques, though admittedly the taxpayers' method is more sophisticated. Taxpayers' own expert witness stated that taxpayers in effect used a "job cost inventory cost accumulation" method. Adding the label "inventory" amounts to nothing more than an attempt by taxpayers to realize substantial tax savings through a LIFO method.

these earlier precedents on the ground that financial accounting techniques have changed sufficiently to warrant inventory treatment for tract home developers. In *Atlantic Coast,* the Board of Tax Appeals reasoned in 1928 that valuation problems prevented using inventory accounting methods for real estate. 11 B.T.A. at 419–20. Taxpayers presented expert evidence in the Tax Court that current financial accounting standards allow for real property to be inventoried. However, *Atlantic Coast* also denied inventory treatment on the ground that real estate should receive different tax accounting because of its unique attributes. *Id.* at 420 (real estate value established "only by identifying each parcel in question"). The fact that financial accounting standards have progressed does not mean that taxpayers have a right to inventory accounting methods for tax purposes. Tax and financial accounting methods frequently diverge. *Thor Power,* 439 U.S. at 541. 99 S.Ct. at 785. The Commissioner has broad discretion over accounting techniques and, as a matter of law, real estate cannot be inventoried until he changes his position or Congress changes the law.[5]

The Tax Court correctly concluded that section 471 generally prohibits the taking of inventories for property other than merchandise. Property other than merchandise can be inventoried only if the regulations to section 471 expressly provide for inventory accounting or the Commissioner consents to the use of inventories. The Commissioner has never consented, either in a regulation or a revenue ruling, to inventory accounting for real estate or real estate developments.

AFFIRMED.

**5.** Taxpayers contend that even if inventories are limited to "merchandise," tract homes constitute merchandise under section 471. The Tax Court has held that merchandise does not include real property. *Miller,* 81 T.C. at 630. This conclusion is supported by accounting literature which defines merchandise as tangible personal property. Statement 1, A.R.B. No. 43., ch. 4, *reprinted in* 4 A.I.C.P.A. Professional Standards, AC § 5121.03 (CCH 1979); W. Meigs, C. Johnson &

R. Meigs, *Accounting: The Basis for Business Decisions* 405 (6th ed. 1984). Finally, common usage of the term merchandise excludes real estate and improvements to real estate. *Webster's Ninth New Collegiate Dictionary* (1983). While taxpayers correctly note that terms are not static in the law, we fail to see an adequate justification for expanding merchandise beyond its current legal, accounting, and common definitions.