THOMPSON ELECTRIC, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Thompson Elec. v. Commissioner
Docket No. 13465-93
United States Tax Court
T.C. Memo 1995-292; 1995 Tax Ct. Memo LEXIS 296; 69 T.C.M. (CCH) 3045; June 28, 1995, Filed *296 Decision will be entered under Rule 155. Robert W. Malone, Steven A. Dimengo, and Mark J. Skakun, for petitioner. Mark I. Siegel, for respondent. COLVIN
COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION COLVIN, Judge: Respondent determined deficiencies in petitioner's Federal income tax of $ 497,417 for the fiscal year ending October 31, 1988 (fiscal year 1988), and $ 78,225 for the fiscal year ending October 31, 1989 (fiscal year 1989). Petitioner is an electrical contractor that used the cash receipts and disbursements method of accounting (cash method) before and during the years in issue. The issues for decision are: 1. Whether respondent's determination that petitioner must use the accrual method of accounting was an abuse of discretion. We hold that it was not. 2. Whether petitioner may use the cash method of accounting for some of the income and expenses of its electrical contracting business and the accrual method of accounting for the rest. We hold that it may not. Section references are to the Internal Revenue Code in effect during the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been *297 stipulated and are so found. 1. Petitioner
Petitioner was an Ohio corporation, the principal place of business of which was in Munro Falls, Ohio, during the years in issue and when it filed the petition. Petitioner has been an electrical contractor since November 1, 1977. Petitioner's customers are located primarily in northeastern Ohio. Larry Thompson has been petitioner's president since 1984. He has owned a majority of petitioner's stock since October 25, 1987. Petitioner has used a taxable year ending on October 31 since it was incorporated in 1977. Petitioner used the cash method of accounting for reporting income from 1977 to November 1, 1990. Petitioner reported its taxable income for fiscal year 1991 using the accrual method of accounting. Petitioner's annual gross receipts were $ 4,238,431 in 1986, $ 4,358,543 in 1987, and $ 5,607,365 in 1988. Petitioner performed electrical contracting services for commercial and residential customers from November 1, 1977, to the date of trial. As part of performing electrical contracting services, petitioner installed materials such as wiring, receptacles, plates, and light fixtures in retail stores, restaurants, office buildings, *298 industrial plants, and new homes. Petitioner sometimes installed fixtures which were furnished by the customer. 2. Petitioner's Bid Process
Petitioner's bid process was generally as follows. Either petitioner's customers or petitioner decided which materials petitioner would use for a job. Petitioner's customers often provided detailed specifications which typically included the quantity, color, model, and manufacturer of the materials. Petitioner sent the specifications to its suppliers to find the cost of required materials. Petitioner's estimates were based on a price for materials equal to the lowest quote from its suppliers. Petitioner increased the cost of materials by amounts which covered its overhead and other costs of obtaining the materials. Petitioner usually increased materials costs by 7 to 15 percent for large contracts and about 20 percent for small contracts. Petitioner's adjustments for overhead costs varied based on anticipated overhead costs. Petitioner priced a contract to recover its anticipated cost of materials and the allocable overhead. Petitioner's overhead costs for materials included salaries, benefits and office overhead, and building storage *299 costs. Building storage costs included items such as depreciation on the building, utilities, real and personal property taxes, and insurance. Petitioner estimated its labor costs, including benefits, payroll taxes, and associated costs for each phase of the job. Petitioner derived its profit on a contract from the labor component of the electrical service provided. Petitioner gave bids to its customers which showed only the total amount to be charged for a job. 3. Petitioner's Materials
Petitioner bought substantially all of the materials it used in its electrical contracting work. Kids R Us was a customer of petitioner that bought a substantial amount of its own materials. Petitioner used materials such as wiring, conduits, electrical panels, and lighting fixtures. Petitioner paid cash for the materials. Petitioner paid Ohio sales tax when it bought the materials. In computing taxable income, petitioner deducted the cost of materials when they were purchased or assigned to a contract, whichever was later. a. Large Contracts and Assigned Purchases
Petitioner's large contracts typically generated fees of $ 150,000 or more and lasted more than 3 to 4 months. Petitioner's *300 small contracts lasted 2 months or less. Petitioner earned about 80 percent of its revenue from large contracts. Substantially all of the materials for large contracts (assigned purchases) were shipped directly to petitioner's customers' sites from petitioner's suppliers. For the years in issue, about 77 percent of petitioner's purchases of materials were for assigned purchases. Petitioner installed substantially all assigned purchases within 10 to 20 working days of their shipment to the customer's premises. b. Small Contracts and Unassigned Purchases
Substantially all of the materials petitioner used for small contracts were from supplies petitioner kept on its premises. Petitioner used unassigned purchases of materials for these small contracts. For the years in issue about 23 percent of petitioner's materials were unassigned purchases. Petitioner's unassigned purchases usually were lower cost materials common to many of its small contracts. Petitioner had a supply of materials from unassigned purchases which it used primarily for occasional service calls and small contracts. Petitioner installed substantially all of these materials within 1 to 3 working days after transferring *301 them to the customer's premises. Petitioner's stock of these materials was worth $ 469,895 on November 30, 1987, $ 68,617 on October 31, 1988, and $ 74,876 on October 31, 1989. Petitioner reported these amounts as inventory on its returns for the years in issue. Petitioner did not display any materials for its customers or the public. Members of the public did not come to petitioner's premises to view its materials. Petitioner did not sell materials separately from its electrical contracts. 4. Billing Practices and Accounts Receivable
Petitioner gave its customers bids and bills with only one price that included labor and materials. Petitioner's bids and bills as presented to its customers did not refer to any markup for materials or identify any materials. Petitioner billed its customers as soon as possible under the terms of its contracts. For large contracts, petitioner made monthly progress billings as determined by the percentage of its completion of the jobs. Contracts completed during a month were billed upon completion. Petitioner billed small contracts immediately after completion. Petitioner's accounts receivable at the end of the year were as follows: Year Ending
Oct. 31, 1987
Oct. 31, 1988
Oct. 31, 1989
Assigned
purchases
$ 876,425
$ 1,170,062
$ 1,386,672
Unassigned
purchases
288,880
313,283
405,493
Total
1,165,305
1,483,345
1,792,165
*302 The ages of petitioner's yearend accounts receivable at the end of the years in issue were as follows: Percentage for Year Ending Age
Oct. 31, 1987
Oct. 31, 1988
Oct. 31, 1989
1-30 days
50 43 35 31-60 days
25 26 19 61-90 days
14 10 10 More than 90 days
11 21 36 100%
100%
100%
During the years in issue, petitioner lost about .2 percent of the cost of materials for large contracts and about 1 percent of the cost of materials for small contracts due to theft and waste. 5. Petitioner's Tax Returns
Petitioner reported the following on its tax returns for fiscal years 1987, 1988, and 1989: FY 1987
FY 1988
FY 1989
Gross receipts
$ 4,238,431
$ 4,358,543
$ 5,607,365
Cost of materials
1,615,485
1,621,462
2,476,621
Labor
1,277,262
1,202,873
1,386,925
Cost of materials as
a percent of gross
receipts
38%  37%  44%  OPINION 1. Background
The issue for decision is whether it was an abuse of respondent's discretion to require petitioner to change from the cash method of accounting to the accrual method of accounting and to require petitioner to use inventories for tax purposes. We consider sections *303 446, 448, and 471 in deciding this issue. Section 446 provides in pertinent part: SEC. 446 (a). General Rule. -- Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books. (b) Exceptions. -- If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect income. (c) Permissible Methods. -- Subject to the provisions of subsections (a) and (b), a taxpayer may compute taxable income under any of the following methods of accounting -- (1) the cash receipts and disbursements method; (2) an accrual method; (3) any other method permitted by this chapter; or (4) any combination of the foregoing methods permitted under regulations prescribed by the Secretary.
In construing section 446, the Commissioner has broad powers to determine whether accounting methods used by a taxpayer clearly reflect income. Commissioner v. Hansen, 360 U.S. 446, 467 (1959). Courts do not interfere with *304 the Commissioner's determination unless it is an abuse of discretion. Thor Power Tool Co. v. Commissioner, 439 U.S. 522, 532 (1979); Lucas v. American Code Co., 280 U.S. 445, 449 (1930); Ford Motor Co. v. Commissioner, 102 T.C. 87, 92 (1994). Whether an abuse of discretion has occurred is a question of fact. Rodebaugh v. Commissioner, 518 F.2d 73, 75 (6th Cir. 1975), affg. T.C. Memo. 1974-36. The taxpayer bears the burden of proving an abuse of discretion by the Commissioner. Asphalt Prods. Co. v. Commissioner, 796 F.2d 843, 848 (6th Cir. 1986), affg. on this issue Akers v. Commissioner, T.C. Memo. 1984-208, revd. on another issue 482 U.S. 117 (1987). However, the Commissioner cannot require a taxpayer to change from an accounting method which clearly reflects its income to an alternate method of accounting merely because the Commissioner considers the alternate method to more clearly reflect the taxpayer's income. Ansley-Sheppard-Burgess Co. v. Commissioner, 104 T.C. 367, 371 (1995).
*305 2. Whether Respondent's Determination That Petitioner Must Use Inventory Accounting Was an Abuse of Discretion
Respondent determined and contends that petitioner must use inventories because petitioner's supplies were merchandise that was an income-producing factor during the years in issue. Petitioner argues that its materials were neither merchandise nor an income-producing factor for purposes of section 471. Section 471 provides in pertinent part: SEC. 471 (a). General Rule. -- Whenever in the opinion of the Secretary the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer on such basis as the Secretary may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.
A taxpayer must use inventories if the production, purchase, or sale of merchandise is an income-producing factor. Sec. 1.471-1, Income Tax Regs.[1] *306 A taxpayer that uses inventories must also generally use the accrual method of accounting. Sec. 1.446-1(c)(2)(i), Income Tax Regs.[2]
We consider the facts and circumstances of each case in deciding whether material is merchandise that is an income-producing factor. Honeywell, Inc. v. Commissioner, T.C. Memo. 1992-453, affd. without published opinion 27 F.3d 571 (8th Cir. 1994); Wilkinson-Beane, Inc. v. Commissioner, T.C. Memo. 1969-79, affd. 420 F.2d 352 (1st Cir. 1970). If the cost of material a taxpayer uses to provide a service is substantial compared to its receipts, the material is a substantial income-producing factor even if the taxpayer does not mark *307 up the prices charged to its customers for the material. Wilkinson-Beane, Inc. v. Commissioner, 420 F.2d at 355. The cost of petitioner's materials varied from 37 to 44 percent of its cash basis receipts during the years in issue. These amounts are more than enough to establish that material is a substantial income-producing factor for petitioner. Knight-Ridder Newspapers v. United States, 743 F.2d 781, 790 (11th Cir. 1984) (17.6 percent of total cash receipts suggests that supplies are an income-producing factor); Wilkinson-Beane, Inc. v. Commissioner, 420 F.2d at 355; Fred H. McGrath & Son, Inc. v. United States, 549 F. Supp. 491, 493 (S.D.N.Y. 1982) (16.7 percent, 15.4 percent, and 14.7 percent suggests that caskets are income-producing factors to a funeral home); cf. Honeywell, Inc. v. Commissioner, supra (no inventory where parts represented 11 and 12 percent of revenue). 3. Petitioner's Contentions Regarding Inventories
Petitioner points out that: (a) Petitioner did not display its supplies to its customers or *308 to the public; (b) its supplies were not itemized on bids or invoices, and there was not a separate charge to the customer for the supplies; (c) petitioner did not sell materials to its customers separately from petitioner's services; and (d) petitioner's customers generally do not select the materials to be used in performing petitioner's services. Although these are appropriate factors to consider, they are not sufficient to show that respondent's determination was an abuse of discretion. Petitioner relies on paragraph 38 of the stipulation of facts which states: "Petitioner's pricing for an electrical contract is designed to recover its anticipated cost of the Supplies and their allocable overhead; profit on the contract is derived from the provision of the labor component of the electrical service provided." Petitioner contends that paragraph 38 shows that it did not intend to profit from the sale of materials. However, even if petitioner sold its materials at cost as part of providing electrical services, it would not establish that the materials were not an income-producing factor under section 1.471-1, Income Tax Regs., because the cost of petitioner's materials was substantial *309 as a percentage of revenues (37 percent to 44 percent). Wilkinson-Beane Inc. v. Commissioner, 420 F.2d at 355. Petitioner argues that under Ohio law, a person who acquires personal property to sell is not liable for Ohio sales or use tax when the property is purchased. Ohio Rev. Code Ann. secs. 5739.01(E)(1); 5741.01(C); and 5711.15 (Anderson 1994 Supp.). Petitioner reasons that, since it paid sales tax on its materials, it is the consumer and not the seller of the materials. We do not agree that the Ohio tax treatment of petitioner's materials bears on petitioner's Federal tax case. Burnet v. Harmel, 287 U.S. 103 (1932); Heiner v. Mellon, 304 U.S. 271 (1938). We conclude that the material at issue was merchandise which was an income-producing factor for petitioner in 1988 and 1989, sec. 1.471-1, Income Tax Regs, and that respondent's determination that petitioner must use inventories was not an abuse of discretion. 4. Whether Petitioner Must Use Accrual Accounting
a. Substantial Identity of Results
Where the Commissioner has determined that the accounting method used by a taxpayer *310 does not clearly reflect income, in order to prevail, the taxpayer must demonstrate substantial identity of results between his method and the method selected by the Commissioner. Asphalt Prods. Co. v. Commissioner, 796 F.2d at 849. A taxpayer that is required to use the inventory method of accounting must meet the substantial-identity-of-results test to show that the Commissioner's determination requiring a change in its method of accounting was an abuse of discretion. Ansley-Sheppard-Burgess Co. v. Commissioner, 104 T.C. at 377. Petitioner did not prove that the result under the cash method is substantially identical with that under the accrual method. Petitioner's taxable income under the cash method of accounting is $ 138,418 for fiscal year 1988 and $ 135,958 for fiscal year 1989. Taxable income under the accrual method of accounting would be $ 331,925 and $ 289,039 for those years. Cf. Ansley-Sheppard-Burgess v. Commissioner, supra at 369 ($ 6,000 per year difference). Petitioner has not shown that it meets the substantial-identity-of-results test. Ansley-Sheppard-Burgess Co. v. Commissioner, 104 T.C. at 377. *311 b. Petitioner's Contentions Regarding Accrual Accounting
Petitioner argues that it has consistently used the cash method of accounting from when it began to operate through the years in issue and that use of the cash method of accounting is authorized by the Internal Revenue Code. Sec. 446(c)(1). However, if the cash method does not clearly reflect income, the taxpayer must use a method determined by the Commissioner that does clearly reflect income. Sec. 446(b). Where a taxpayer's method of accounting clearly reflects income, the Commissioner may not require a change. Prabel v. Commissioner, 91 T.C. 1101, 1112 (1988), affd. 882 F.2d 820 (3d Cir. 1989). The cash method does not clearly reflect income because petitioner had large and rapidly increasing accounts receivable during the years in issue. Petitioner's accounts receivable were $ 1,483,345 (34 percent of gross receipts for fiscal year 1988) on October 31, 1988, and $ 1,792,165 on October 31, 1989 (32 percent of gross receipts for fiscal year 1989). J. P. Sheahan Associates, Inc. v. Commissioner, T.C. Memo. 1992-239 (accounts receivable *312 that averaged about 11.6 percent over 4 years created a substantial distortion in income). During the years in issue, petitioner's accounts receivable increased by more than $ 600,000, and inventories dropped by nearly $ 400,000. These changes produced significant increases in the mismatching of expenses and revenues. Knight-Ridder Newspapers v. United States, 743 F.2d at 784-785 (increased supply purchases considered in holding that the taxpayer must use inventories). Petitioner's large accounts receivable appear to cause much of the disparity between results under the cash and accrual accounting methods. Ralston Dev. Corp. v. United States, 937 F.2d 510, 513 n.5 (10th Cir. 1991) (the substantial difference between results under the cash and accrual methods was largely due to delayed income from construction contracts). Petitioner contends that the construction industry has traditionally been allowed to use the cash method. Petitioner overstates the point. For example, we have held that a roofing contractor may not use the cash method. J. P. Sheahan Associates, Inc. v. Commissioner, supra. *313 Petitioner's reliance on Magnon v. Commissioner, 73 T.C. 980, 1005-1006 (1980), is misplaced because that case did not address inventory issues. Petitioner contends that respondent's procedures as stated in the Internal Revenue Manual allow petitioner to use the cash method. Petitioner's reliance on the Internal Revenue Manual is misplaced because the manual confers no rights on taxpayers. United States v. Caceres, 440 U.S. 741, 752-753 (1979). Petitioner's reliance on Rev. Rul. 81-232, 1981-2 C.B. 231, and Priv. Ltr. Rul. 83-52-072 (Sept. 29, 1983) is misplaced because both of them pertain to the reporting requirements of section 6041(a), and neither of them involves an inventory issue. Rev. Rul. 81-232, supra, pertained to reporting requirements for an insurance company's payment to an automobile repair shop. The letter ruling pertained to reporting requirements of a general contractor who engages subcontractors. We have concluded that petitioner's materials were merchandise that was an income-producing factor and that petitioner *314 is required to use inventories. Sec. 1.471-1, Income Tax Regs. Thus, petitioner must use the accrual method of accounting. Sec. 1.446-1(c)(2)(1), Income Tax Regs.
5. Section 448
Petitioner contends that it should be allowed to use the cash method of accounting because section 448 does not bar it. We disagree. The fact that section 448 does not preclude petitioner from using the cash method does not authorize it if, as discussed above, the cash method does not clearly reflect income. Sec. 446(b). Section 448 was enacted by the Tax Reform Act of 1986, Pub. L. 99-514, sec. 801(a), 100 Stat. 2345. Section 448 provides in pertinent part: SEC. 448. LIMITATION ON USE OF CASH METHOD OF ACCOUNTING. (a) General Rule. -- Except as otherwise provided in this section, in the case of a -- (1) C corporation, (2) partnership which has a C corporation as a partner, or (3) tax shelter,
taxable income shall not be computed under the cash receipts and disbursements method of accounting. (b) Exceptions. -- * * * (3) Entities with gross receipts of not more than $ 5,000,000 -- Paragraphs (1) and (2) of subsection (a) shall not apply to any corporation or partnership for any *315 taxable year if, for all prior taxable years beginning after December 31, 1985, such entity (or any predecessor) met the $ 5,000,000 gross receipts test of subsection (c).
(c) $ 5,000,000 Gross Receipts Test. -- For purposes of this section -- (1) In general. -- A corporation or partnership meets the $ 5,000,000 gross receipts test of this subsection for any prior taxable year if the average annual gross receipts of such entity for the 3-taxable-year period ending with such prior taxable year does not exceed $ 5,000,000.
Section 448 does not apply to this case. Petitioner was not barred by section 448 from using the cash method of accounting until 1991 because petitioner's average annual gross receipts first exceeded $ 5 million for the 3-taxable-year period ending in 1990. Sec. 448(c)(1). We have previously considered the fact that section 448 does not bar a taxpayer from using the cash method of accounting in holding that it was an abuse of discretion for the Commissioner to determine that the cash method does not clearly reflect income. Ansley-Sheppard-Burgess v. Commissioner, 104 T.C. at 375. However, unlike petitioner in the instant *316 case, the taxpayer in Ansley-Sheppard-Burgess did not have inventories. Based on the foregoing, we hold that respondent's determination that petitioner must use the accrual method of accounting for taxable years 1987 and 1988 is not an abuse of discretion. 6. Petitioner's Use of Both the Cash and Accrual Methods of Accounting
Petitioner contends that if we conclude that petitioner's supplies are inventory for purposes of section 1.446-1(c)(2)(i), Income Tax Regs., then petitioner is required to use the accrual method of accounting only for the purchase and sale of supplies. We disagree. Petitioner must use the accrual method because it has inventories. Sec. 1.446-1(c)(2)(i), Income Tax Regs. The regulations also provide: A taxpayer using an accrual method of accounting with respect to purchases and sales may use the cash method in computing all other items of income and expense. However, a taxpayer who uses the cash method of accounting in computing gross income from his trade or business shall use the cash method in computing expenses of such trade or business. Similarly, a taxpayer who uses an accrual method of accounting in computing business expenses shall use *317 an accrual method in computing items affecting gross income from his trade or business.
Sec. 1.446-1(c)(1)(iv), Income Tax Regs.
Petitioner's sale of electrical contracting services and materials used for those services are not separable for purposes of deciding which accounting method it may use. Petitioner must use the accrual method of accounting for all items of gross income from its electrical contracting business. Id. Allowing petitioner to use both the cash and accrual methods for its electrical contracting business would continue the distortion of income present if it uses the cash method. Petitioner relies on Stoller v. United States, 162 Ct. Cl. 839, 320 F.2d 340 (1963), and Smithback Plumbing, Inc. v. United States, 37 AFTR 2d 76-486, 76-1 USTC par. 9139 (Ct. Cl. 1975), for its contention that it may use the accrual method for inventories and the cash method for services. Neither case controls here. The Commissioner agreed in Stoller that the taxpayer could use the cash method of accounting even though he had inventories. The taxpayer accrued purchases and operating *318 expenses but did not accrue sales on account. Stoller v. United States, supra at 342. Although the Commissioner permitted the taxpayer to use the cash method of accounting, the taxpayer and the Commissioner disagreed on how to apply that method to specific items of income and expense. Here, respondent does not agree that petitioner's proposed hybrid method of accounting clearly reflects income. The issue for decision in Smithback Plumbing was whether the taxpayer was a cash or accrual basis taxpayer. The Government contended that the taxpayer was a cash basis taxpayer because the taxpayer filed its 1962 return on a cash basis. In late 1962, the taxpayer's accountants discovered that it had failed to properly account for inventory on its 1962 return. The taxpayer filed an amended return for 1962 to account for inventory. The amended return included a Schedule C in which the taxpayer placed an "x" in the box next to the word "accrual". The taxpayer did not ask to change its accounting method. The court rejected the taxpayer's contentions that it was an accrual method taxpayer because the original 1962 return was erroneous and the amended return governed. The court also *319 disagreed with the taxpayer's contention that the amended return notified the Government of the taxpayer's change in accounting method. The court held that the taxpayer was a cash basis taxpayer even though it had inventories, citing section 1.446-1(c)(1)(iv), Income Tax Regs., and Stoller v. United States, supra.We noted above that section 1.446-1(c)(1)(iv), Income Tax Regs., requires a taxpayer who uses an accrual method of accounting in computing business expenses to use an accrual method in computing items affecting gross income from his trade or business. Thus, we sustain respondent's determination that petitioner must use the accrual method for its entire electrical contracting business. To reflect concessions, Decision will be entered under Rule 155. Footnotes
1. Sec. 1.471-1, Income Tax Regs., provides in part: Need for inventories. -- In order to reflect taxable income correctly, inventories at the beginning and end of each taxable year are necessary in every case in which the production, purchase, or sale of merchandise is an income-producing factor. The inventory should include all finished or partly finished goods and, in the case of raw materials and supplies, only those which have been acquired for sale or which will physically become a part of merchandise intended for sale * * *. Merchandise should be included in the inventory only if title thereto is vested in the taxpayer. * * * A purchaser should include in inventory merchandise purchased (including containers), title to which has passed to him, although such merchandise is in transit or for other reasons has not been reduced to physical possession, but should not include goods ordered for future delivery, transfer of title to which has not yet been effected. * * *↩
2. Sec. 1.446-1(c)(2), Income Tax Regs., provides: (2) Special rules. (i) In any case in which it is necessary to use an inventory the accrual method of accounting must be used with regard to purchases and sales unless otherwise authorized under subdivision (ii) of this subparagraph. (ii) No method of accounting will be regarded as clearly reflecting income unless all items of gross profit and deductions are treated with consistency from year to year. * * *↩