T.C. Memo. 1998-223


UNITED STATES TAX COURT


JIM TURIN & SONS, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 17643-96.                    Filed June 24, 1998.


<u>Norman Sepenuk</u> and <u>Gary P. Compa</u>, for petitioner.

<u>Kathey I. Shaw</u> and <u>Shirley M. Francis</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

PARR, <u>Judge</u>:   Respondent determined deficiencies in
petitioner's Federal income tax for taxable years 1987, 1988,
1990, 1991, and 1993 in the amounts of $378, $302, $23,269,
$39,561, and $20,770, respectively.

All section references are to the Internal Revenue Code in
effect for the taxable years in issue, and all Rule references

are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

After a concession,[1] the issue for decision is: Whether respondent's determination that petitioner must change from the cash method of accounting to the accrual method of accounting was an abuse of discretion. We hold it was.

Some of the facts have been stipulated and are so found. The stipulated facts and the accompanying exhibits are incorporated herein by this reference. At the time the petition in this case was filed, petitioner's principal place of business was located in Sandy, Oregon.

## FINDINGS OF FACT

Petitioner is a corporation engaged in the business of providing asphalt paving services. A sister corporation, Mt. Hood Asphalt (Mt. Hood), manufactures asphalt. On an as-needed basis, petitioner purchases asphalt from Mt. Hood at approximately $19 per ton. Mt. Hood also sells asphalt to its other customers at approximately $23 per ton.

When bidding on a contract or job, petitioner prices the asphalt at cost. Since petitioner can generally purchase asphalt at a lower cost, it has a competitive advantage over other paving

---

[1] Respondent concedes a repairs expense adjustment for 1991 of $18,800 and related adjustments for depreciation expenses for 1991, 1992, and 1993. In light of this concession, and previously agreed adjustments set forth in the statutory notice of deficiency, a Rule 155 computation is necessary.

contractors in bidding on a contract. This competitive advantage, the difference between petitioner's cost of asphalt and the price other paving contractors have to pay for asphalt, is passed along to the customer. If petitioner marked up the asphalt, it would have no competitive advantage in bidding on contracts. On some jobs, petitioner purchases asphalt from third parties. In bidding on contracts where asphalt is purchased from third parties, the asphalt is also bid at cost.

Over the years, petitioner has developed its own method for determining the profit necessary for a normal job. This method is to charge approximately $3,000 for a full paving crew for 1-day's work. This $3,000 per day will cover petitioner's office overhead and provide sufficient profit to keep petitioner in business. The base $3,000 per day figure is then sometimes modified depending on competitive conditions. If petitioner is very busy or has some other competitive advantage such as location and is requested to bid on a job, petitioner may bid substantially higher than $3,000 per day. Conversely, if business is slow, or for some other reason, petitioner may bid substantially below $3,000 per day to get the job. Whatever the job, asphalt is always priced at cost, and the income earned on a particular job or contract bears no relation to the amount of asphalt used.

In performing its paving contracts, petitioner takes delivery of the asphalt when its temperature is between 300 and 320 degrees Fahrenheit.  If the asphalt is not on the ground and rolled by the time it is 150 degrees, it can no longer be used. Under normal circumstances, the window of opportunity is approximately 3 hours.

Petitioner has approximately 100 to 150 jobs or contracts per year of varying size and complexity.  Generally, petitioner does not get paid until it completes a job.  When a job is finished, petitioner bills the customer and requires payment typically within 30 days.

## OPINION

Respondent determined that for the taxable years 1990, 1991, and 1993,[2] petitioner's asphalt was merchandise that was an income-producing factor, that petitioner therefore had inventories, and thus it must use the accrual method of accounting in order to clearly reflect taxable income.

The principal issue for decision is whether it was an abuse of respondent's discretion to require petitioner to change from the cash method of accounting to the accrual method of accounting.  Subsumed in this issue is the question of whether

---

[2]     Although the statutory notice of deficiency in the instant case covered 1987, 1988, 1990, 1991, and 1993, respondent did not change petitioner's method of accounting for 1987 and 1988.

petitioner should be required to use inventories for tax purposes.

By regulation, the Secretary has determined that inventories are necessary if the production, purchase, or sale of merchandise is an income-producing factor. Sec. 1.471-1, Income Tax Regs. Although not specifically defined in the Internal Revenue Code or the regulations, courts have held that "merchandise", as used in section 1.471-1, Income Tax Regs., is an item acquired and held for sale. See, e.g., Wilkinson-Beane, Inc. v. Commissioner, 420 F.2d 352, 354-355 (1st Cir. 1970), affg. T.C. Memo. 1969-79.

A taxpayer that has inventories is required to use the accrual method of accounting, unless it can show that the use of another method (here, the cash method) would produce a substantial identity of results and that the Commissioner's determination requiring a change is an abuse of discretion. Ansley-Sheppard-Burgess Co. v. Commissioner, 104 T.C. 367, 377 (1995); see also Knight-Ridder Newspapers, Inc. v. United States, 743 F.2d 781, 789, 791-793 (11th Cir. 1984); Wilkinson-Beane, Inc. v. Commissioner, supra.

We find as fact that emulsified asphalt, which becomes useless in approximately 3 hours, is not merchandise held for sale by petitioner. See Galedrige Constr., Inc. v. Commissioner, T.C. Memo. 1997-240. We further find as fact that petitioner has no inventories; thus, section 1.471-1, Income Tax Regs., does not

apply to petitioner for the taxable years at issue.  In addition, we find that petitioner's method of accounting clearly reflects income, and that it was an abuse of respondent's discretion to require petitioner to use the accrual method of accounting.[3]  See <u>Galedrige Constr., Inc. v. Commissioner</u>, <u>supra</u>.

For the foregoing reasons,

<u>Decision will be entered</u>

<u>under Rule 155.</u>

---

[3]  Respondent acknowledges that the facts of the instant case and <u>Galedrige Constr., Inc. v. Commissioner</u>, T.C. Memo. 1997-240, are similar.  Notwithstanding this acknowledgment, respondent attempts to distinguish <u>Galedrige Constr., Inc.</u> from the instant case.  We find these distinctions unconvincing.