**JIM TURIN & SONS, INC.,**
Petitioner–Appellee,

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellant.**

No. 99–70130.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 2, 2000.

Filed July 21, 2000.

Randolph L. Hutter, Tax Division, U.S. Department of Justice, Washington, D.C., for the respondent-appellant.

James L. Collins (argued), Gary P. Compa, Norman Sepenuk, Portland, Oregon, for the petitioner-appellee.

John P. McDonnell, Myers, Hawley, Morley & Berry, Los Altos, California, for the amicus.

Before: LAY,* TASHIMA, and McKEOWN, Circuit Judges.

TASHIMA, Circuit Judge:

The Commissioner of Internal Revenue ("Commissioner") appeals the Tax Court's decision that he abused his discretion in requiring Jim Turin & Sons, Inc. ("taxpayer"), to use the accrual method of accounting to compute its federal taxes for the tax years at issue. In particular, the Commissioner contests the Tax Court's finding that emulsified asphalt is not "merchandise," as that term is used in 26 C.F.R. § 1.471–1. The Tax Court had jurisdiction pursuant to 26 U.S.C. §§ 6213, 6214, and 7442. We have jurisdiction pursuant to 26 U.S.C. § 7482, and we affirm.

---

* The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

## I. Facts and Procedural Background[1]

Taxpayer is a corporation that provides paving services. Taxpayer purchases its asphalt from a sister manufacturing corporation. When bidding on a contract, taxpayer prices the asphalt at its cost. The sister company ships the asphalt just hours before a paving job. Because of the physical properties of emulsified asphalt, taxpayer must use it within several hours of shipment, otherwise it hardens and becomes useless. Once a job is completed, taxpayer is generally paid within 10 to 30 days of billing.

For the tax years at issue, taxpayer used a cash method of accounting for federal tax purposes, taking deductions for the cost of the asphalt for a job immediately upon its payment to the sister corporation and recognizing income for a job when it received payment. The Commissioner determined that asphalt was "merchandise," under Treas. Reg. § 1.471–1, such that taxpayer had inventories and thus was required to use the accrual method of accounting. The accrual method would require the taxpayer to recognize income upon the completion of a job, as opposed to when it received payment for a job.

The Tax Court concluded that the Commissioner abused his discretion in so requiring. *See Jim Turin & Sons, Inc. v. Commissioner,* 75 T.C.M. (CCH) 2534, 1998 WL 331431 (1998). It first found that asphalt was not merchandise, relying upon *Galedrige Constr., Inc. v. Commissioner,* 73 T.C.M. (CCH) 2838, 1997 WL 269574

(1997). *Id.* at 2535. The Tax Court also found that because the taxpayer had no inventories, § 1.471–1 did not apply. *Id.* Finally, it found that the cash method of accounting clearly reflected taxpayer's income, so that even if § 1.471–1 applied, taxpayer was not required to change its accounting method. *Id.* at 2535–36. The Commissioner timely appealed.

## II. Standard Of Review

■■■ The Supreme Court has held that the Commissioner's decision to require the use of a particular method of inventory accounting is a discretionary one and that "his interpretation of the statute's . . . standard 'should not be interfered with unless clearly unlawful.'" *Thor Power Tool Co. v. Commissioner,* 439 U.S. 522, 532, 99 S.Ct. 773, 58 L.Ed.2d 785 (1979) (quoting *Lucas v. American Code Co.,* 280 U.S. 445, 449, 50 S.Ct. 202, 74 L.Ed. 538 (1930)). "[T]he Commissioner's disallowance of an inventory accounting method is not to be set aside unless shown to be 'plainly arbitrary.'" *Id.* at 532–33, 99 S.Ct. 773 (quoting *Lucas v. Structural Steel Co.,* 281 U.S. 264, 271, 50 S.Ct. 263, 74 L.Ed. 848 (1930)). Thus, we independently review for abuse of discretion,[2] and our task is to determine whether the Commissioner's decision to require taxpayer to use the accrual method of accounting is clearly unlawful or plainly arbitrary. *See Homes by Ayres v. Commissioner,* 795 F.2d 832, 834 (9th Cir.1986).[3]

1. Except as noted, all statutory references are to the Internal Revenue Code of 1986 (26 U.S.C.), as amended, in effect during the years in issue ("I.R.C."), and all references to regulations are to those (26 C.F.R.) in effect during the years in issue ("Treas.Reg.").

2. None of the material facts are disputed.

3. In *Homes by Ayres,* we also stated that "[w]hether the term 'merchandise' includes [a particular item] under I.R.C. § 471 is a question of law reviewed de novo." 795 F.2d at 834. That statement, however, was dictum, as the case was decided on the basis that "as a matter of law, real estate cannot be invento-

ried until he [the Commissioner] changes his position or Congress changes the law," and not on the basis of whether real estate was merchandise. *Id.* at 836. Moreover, "merchandise" was discussed in the opinion only in the definitional sense. *See id.* at 836 n. 5 ("we fail to see an adequate justification for expanding merchandise beyond its current legal, accounting, and common definitions"). Because we conclude, however, that the Commissioner abused his discretion in determining that asphalt was merchandise, we need not decide whether the less deferential de novo standard of review set forth in the *Homes by Ayres* dictum correctly states the standard of review on this issue.

## III. Discussion

Under Treas. Reg. § 1.471–1, a taxpayer must use inventories and the accrual method of accounting [4] when the "production, purchase or sale of merchandise is an income-producing factor" in order to "reflect taxable income correctly." The rationale behind § 1.471–1,[5] and the underlying statute, I.R.C. § 471,[6] is straightforward. If a taxpayer held sizable inventories for resale, under a cash method, the taxpayer could defer income by purchasing all of its goods at the end of one year and taking deductions for the purchase at that time, then selling the goods in subsequent years without recognizing income until its receipts of proceeds from the sales. For example, in *Knight–Ridder Newspapers, Inc. v. United States,* 743 F.2d 781 (11th Cir.1984), the court stated that:

> According to accounting wisdom, the income realized from the sale of merchandise is most clearly measured by matching the cost of that merchandise with the revenue derived from its sale. In order to achieve such a matching of revenue and cost, it is necessary to keep an inventory account reflecting the costs of merchandise, raw materials, and manufacturing expenses. These costs are not deducted immediately when paid but

are deferred until the year when the resulting merchandise is sold.

> To make the matching complete, the taxpayer must report income on the accrual method. That method helps to ensure that income from the sale (like the inventory costs) is reflected in the year of the sale. For example, if the sale is made on credit, the accrual method nevertheless treats the income as accrued and reflects it when the sale occurs. . . .

> By contrast, the primal cash method is unable to achieve such a mystical joinder of inventory deductions and credit sale income. To be sure, the cash method could theoretically operate in tandem with inventories. The beast could conceivably close its eyes to deductions until the year of the sale. It could never learn, however, to prophesy future cash payments. If there were a credit sale, the beast could not grasp income and deductions simultaneously in its rugged paw. The goal of matching costs and revenues would fail.

*Id.* at 789 (footnotes and internal citations omitted); *see also Herberger v. Commissioner,* 195 F.2d 293, 295 (9th Cir.1952) (finding that taxpayer who purchased and stored cucumbers for pickling was re-

---

In a case predating *Thor Power Tool,* we held that the standard of review of the Tax Court's determination that the Commissioner did not abuse his discretion was whether or not the Tax Court's determination was "clearly erroneous." *Cole v. Commissioner,* 586 F.2d 747, 749 (9th Cir.1978). *Thor Power Tool,* however, clearly requires that we directly review the Commissioner's decision under the proper standard of review, without giving deference to the Tax Court's decision, as the Court itself did in *Thor Power Tool. See* 439 U.S. at 532–37, 99 S.Ct. 773. To the extent that *Cole* 's standard of review is inconsistent with *Thor Power Tool,* at least with respect to review of the Commissioner's determination of a taxpayer's inventory accounting methods, we conclude that *Cole* has been overruled by *Thor Power Tool.*

4. Under Treas. Reg. § 1.446–1(c)(2)(i), a taxpayer who is required to use inventories must

also use the accrual method of income reporting.

5. Treas. Reg. § 1.471–1 provides in part:

> In order to reflect taxable income correctly, inventories at the beginning and end of each taxable year are necessary in every case in which the production, purchase, or sale of merchandise is an income-producing factor.

6. I.R.C. § 471(a) states:

> Whenever in the opinion of the Secretary the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer on such basis as the Secretary may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.

quired to use accrual method to reflect accurately purchases and sales).

■ A paving company that lays asphalt immediately upon purchase cannot delay income or accelerate deductions by inventorying its asphalt, because there is *no* inventory that can be purchased late in one tax year and held over to the next. Thus, given the rationale of § 1.471–1, we agree with the Tax Court that asphalt is not merchandise, and that taxpayer should not have been required to use the accrual method because § 1.471–1 does not apply.

■ The Commissioner's argument that taxpayer failed to adopt an accounting method that clearly reflected income is wholly unrelated to the inventory issues of § 1.471–1. Rather, the disparity in taxable income calculated by the Commissioner relating to the paving jobs stems from the mismatch of deductions and income due to the fact that taxpayer had outstanding accounts receivable at the end of each tax year that were not immediately recognized under the cash method of accounting. These accounts receivable did not stem from taxpayer's misuse of inventories, but were merely run-of-the-mill debts for collection. The failure of a taxpayer to include accounts receivable in taxable income is not a sufficient basis for the Commissioner to require the use of the accrual method. *See Ansley–Sheppard–Burgess Co. v. Commissioner*, 104 T.C. 367, 371–75, 1995 WL 131530 (1995). We thus agree with the Tax Court that the Commissioner abused his discretion in requiring taxpayer to adopt the accrual method.

The Tax Court properly relied upon its earlier decision in *Galedrige*, where it held that "the peculiar physical properties of emulsified asphalt make it impossible" for the taxpayer to hold it in inventory. 73 T.C.M. (CCH) at 2842. On this basis, the Tax Court held that the paving company was not required to use an accrual method with respect to the asphalt. *See id.* at 2843–46. Recently, in *RACMP Enters., Inc. v. Commissioner*, No. 23954–97, 2000 WL 330333 (T.C. Mar. 30, 2000) (en banc), the Tax Court reaffirmed *Galedrige* in deciding that a contractor who poured cement was not subject to the requirements of § 1.471–1, because mixed cement, like asphalt, changes its physical state rapidly so as quickly to become useless. *See id.*, 2000 WL 330333.

■ *Galedrige* and *RACMP Enterprises* represent the sound principle that § 1.471–1 does not apply where the item in question cannot be warehoused in inventory, especially where traditional service providers are involved. *See RACMP Enters.*, 2000 WL 330333 ("Consumption of a material in the performance of a service or in a manufacturing process is indicative that the material is a supply, not merchandise held for sale."); *cf. Osteopathic Med. Oncology and Hematology, P.C. v. Commissioner*, 113 T.C. 376, 384–92, 1999 WL 1051964 (1999) (holding that drugs and pharmaceuticals used during the treatment of patients were not merchandise under § 1.471–1 because their use was part of an overall service); *Homes By Ayres*, 795 F.2d at 836 n. 5 ("common usage of the term merchandise excludes … improvements to real estate").

The Commissioner's attempt to force asphalt into the cubby-hole of "merchandise" disregards the purpose of § 1.471–1. The Commissioner argues that the transfer of title from the manufacturer of asphalt to the taxpayer is determinative, as opposed to whether the asphalt has the "physical properties necessary for it to be held for sales 'at the end of the day.'" The Commissioner further contends that possessing title for an instant is sufficient to require a taxpayer to inventory its goods, so long as the goods are acquired and held for sale. The Commissioner cites a number of Tax Court cases in support of his contentions; however, all of them are distinguishable.

In *Wilkinson–Beane, Inc. v. Commissioner*, 420 F.2d 352 (1st Cir.1970), the taxpayer sold caskets as part of a package of providing funeral services. *See id.* at

354. The application of § 1.471–1 in that case, however, is distinguishable because caskets, unlike asphalt, may clearly be stored in inventory. *See also Addison Distrib., Inc. v. Commissioner*, 76 T.C.M. (CCH) 251, 254, 1998 WL 453667 (1998) (holding that company which repackaged and shipped silicon wafers and circuit boards, which can be warehoused and which the parties stipulated were merchandise, was subject to § 1.471–1); *Surtronics, Inc. v. Commissioner*, 50 T.C.M. (CCH) 99, 104, 1985 WL 14904 (1985) (finding that the use of metals, which can be stored in inventory, necessitated the use of § 1.471–1 with respect to the taxpayer's electroplating business).

The Commissioner cites *Knight–Ridder*, 743 F.2d at 790, to emphasize that even a perishable commodity, such as newspapers, are subject to § 1.471–1. The Commissioner fails to note, however, that the *Knight–Ridder* court substantially relied upon the disparity in deductions and income created from the advance purchase and subsequent storage of paper and ink used to produce the daily newspaper. *See* 743 F.2d at 789–91. While the finished product—a daily newspaper—may be perishable, because the underlying ingredients—paper and ink—can be stored in a manner to advance deductions and delay income, the application of § 1.471–1 was proper, and distinguishes *Knight–Ridder* from this case. *See also Asphalt Prods. Co., Inc. v. Commissioner*, 796 F.2d 843 (6th Cir.1986) (holding that manufacturer of asphalt was required to use inventory and accrual method because it stored the raw materials used to make asphalt), *rev'd in part on other grounds*, 482 U.S. 117, 107 S.Ct. 2275, 96 L.Ed.2d 97 (1987); *Tebarco Mechanical Corp. v. Commissioner*, 74 T.C.M. (CCH) 29, 33, 1997 WL 366817 (1997) (finding that mechanical subcontractor who maintained a warehouse with construction materials was subject to the requirements of § 1.471–1); *Thompson Elec., Inc. v. Commissioner*, 69 T.C.M. (CCH) 3045, 3049, 1995 WL 382120 (1995) (holding that electrical contractor who

stored materials to be installed was required to use inventory and accrual method under § 1.471–1).

In *Middlebrooks v. Commissioner*, 34 T.C.M. (CCH) 1187, 1191, 1975 WL 2893 (1975), also cited by the Commissioner, the taxpayer published a magazine and was required to use the inventory method, because the taxpayer took title to the magazines, notwithstanding the fact that the taxpayer usually did not physically possess the magazines. *Middlebrooks* is similar to *Wilkinson–Beane* because magazines (although somewhat perishable) may be held in inventory for a sizable time period, thus allowing a taxpayer who deals in magazines to accelerate deductions and delay income. *See Middlebrooks*, 34 T.C.M. at 1191. Because the ability to take deductions turns on title, as opposed to physical possession, *Middlebrooks* properly held that possession is not a prerequisite to the application of § 1.471–1. *See id.* As with *Wilkinson–Beane*, however, *Middlebrooks* is not persuasive authority on these facts, because here, the nature of asphalt does not allow it to be warehoused.

■ It also is not determinative here that the Tax Court has held that taxpayers who sell merchandise, but who either retain only "momentary title" or keep no inventory, are subject to § 1.471–1. *Epic Metals Corp. v. Commissioner*, 48 T.C.M. (CCH) 357, 361, 1984 WL 14974 (1984), *aff'd*, 770 F.2d 1069 (3rd Cir.1985). Section 1.471–1 applies to any merchandise that *could* be stored as inventory. *See, e.g., Von Euw & L.J. Nunes Trucking, Inc. v. Commissioner*, T.C.M. (RIA) 2000–14, 2000 WL 337562 (2000) (holding that transporter of sand and gravel was required to use accrual method, even though taxpayer kept no sand or gravel on hand); *Epic Metals*, 48 T.C.M. (CCH) at 361 (holding that taxpayer was required to use inventory and accrual method where commodity at issue was metal decking which could be warehoused, even though title passed to the taxpayer for only an instant);

*J.P. Sheahan Assocs., Inc. v. Commissioner*, 63 T.C.M. (CCH) 2842, 1992 WL 80927 (1992) (finding that the taxpayer was required to take inventories and use the accrual method for otherwise storable construction materials, even though it had no year-end inventory).

■ None of the cases on which the Commissioner relies is on point because all involved goods that were or could be stored in inventory.[7] They have no application to the case at bench because, to repeat, taxpayer is physically unable to manipulate the matching or non-matching of deductions and income. Because we hold that asphalt is not merchandise, cases holding that momentary title to merchandise is sufficient are inapposite.

### IV. Conclusion

Because asphalt cannot be stored, it is not susceptible to being inventoried. We thus agree with the Tax Court that asphalt is not "merchandise" within the scope of Treas. Reg. § 1.471–1.[8] The Commissioner therefore abused his discretion in requiring taxpayer to use the accrual method of accounting.

**AFFIRMED.**

---

7. On the other hand, the Commissioner is correct in arguing that an "income-producing" factor under Treas. Reg. § 1.471–1 need not be a net profit-producing factor. Even if a taxpayer sells goods at cost, by inventorying these goods, deductions may be accelerated to offset other income if the accrual method is not used. Thus, so long as the purchase and sale of an item of merchandise is sufficiently significant, *see Knight–Ridder*, 743 F.2d at 790, whether or not a profit is made on the sale of particular item in inventory is immaterial. *See Wilkinson–Beane*, 420 F.2d at 355 ("Even if it were shown that taxpayer did not mark up the price of the caskets and relied for its profit on the price of the overall funeral, we would apply the familiar maxim that in tax matters the court will not exalt form over substance."); *Thompson Electric*, 69 T.C.M. at 3048.

8. Because of our resolution of the other issues, we need not decide whether the Tax Court correctly found that, even if asphalt were merchandise, the cash method of accounting yields the same tax results in this case as the accrual method.