ANSLEY-SHEPPARD-BURGESS COMPANY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 14095–93.  Filed March 28, 1995.

*David D. Aughtry* and *Donald P. Lancaster*, for petitioner.
*J. Mack Karesh, Clinton M. Fried,* and *Charles P. Hanfman,* for respondent.

WELLS, *Judge:* Respondent determined a deficiency in petitioner's 1990 Federal income tax in the amount of $11,810 and an accuracy-related penalty under section 6662 in the amount of $2,362.[1] After concessions by both parties, the sole issue for decision is whether respondent's determination requiring that petitioner change its method of accounting from the cash receipts and disbursements method to the percentage of completion method was an abuse of discretion.

## FINDINGS OF FACT

Some of the facts and certain documents have been stipulated for trial pursuant to Rule 91. The stipulated facts are incorporated in our findings of fact by reference and are found accordingly. At the time the petition was filed in the instant case, petitioner maintained its principal office in Savannah, Georgia. Petitioner was incorporated in the State of Georgia on January 3, 1980. Petitioner's stock is equally

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

owned by three individuals: Tim F. Ansley, J.E. Sheppard, and W.D. Burgess. Petitioner is a subchapter C corporation engaged in the construction business. In addition to performing construction projects using its own personnel, petitioner is frequently responsible for hiring and monitoring subcontractors for various construction projects. The majority of the construction projects petitioner has performed were completed within 6 to 9 months, with its longest project lasting 1½ years.

Petitioner is a calendar year taxpayer and has always maintained its books and records, and reported its income for Federal tax purposes, on the cash receipts and disbursements method of accounting (the cash method). Petitioner does not maintain an inventory. Petitioner's bonding company and banks, however, require petitioner to maintain financial statements using the percentage of completion method of accounting (the percentage of completion method). Petitioner uses the services of a certified public accountant to prepare financial statements reporting its income on the percentage of completion method. Petitioner then submits the financial statements to its bonding company and banks.

During May of 1993, respondent mailed petitioner a notice of deficiency in which respondent determined, inter alia, that petitioner's use of the cash method did not clearly reflect its income. In the notice of deficiency, respondent determined that the percentage of completion method clearly reflected petitioner's income and required petitioner to use such method to compute its taxable income. The notice of deficiency designates petitioner's taxable year 1990 as the first year of the accounting change. Respondent's use of the percentage of completion method results in a decrease of $9,503 to petitioner's taxable income for its taxable year 1990, before any section 481 adjustment. A section 481 cumulative adjustment, however, increases petitioner's taxable income in the amount of $55,053 for its taxable years 1980 through 1989.

The parties stipulated that if petitioner had computed its taxable income using the percentage of completion method since its incorporation, petitioner would have included an additional $6,117 in net income per year. The parties also stipulated that for all relevant years in issue, petitioner qualifies as a corporation with not more than $5 million in

gross receipts for purposes of section 448(b)(3). The average annual gross receipts for petitioner's taxable years 1987, 1988, and 1989 was $2,394,510.60.

## OPINION

The issue we must decide is whether respondent's determination that petitioner report its income on the percentage of completion method constitutes an abuse of discretion.[2] Respondent contends that petitioner's use of the cash method resulted in a distortion in the amount of taxable income petitioner reported on its Federal income tax returns. Petitioner, on the other hand, contends that its use of the cash method clearly reflects its income and that its use of the cash method is explicitly sanctioned by section 448(b). Consequently, petitioner argues that it was an abuse of respondent's discretion to require petitioner to report its income on the percentage of completion method for its taxable year 1990.

Section 446(b) vests the Commissioner with broad discretion in determining whether a particular method of accounting clearly reflects income. *Knight-Ridder Newspapers v. United States,* 743 F.2d 781, 788 (11th Cir. 1984); *RLC Indus. Co. v. Commissioner,* 98 T.C. 457, 491 (1992); *Capitol Fed. Sav. & Loan Association v. Commissioner,* 96 T.C. 204, 209 (1991); *Prabel v. Commissioner,* 91 T.C. 1101, 1112 (1988), affd. 882 F.2d 820 (3d Cir. 1989). The Commissioner's determination is entitled to more than the usual presumption of correctness. *RLC Indus. Co. v. Commissioner, supra* at 491; *RECO Indus., Inc. v. Commissioner,* 83 T.C. 912, 920 (1984); *Peninsula Steel Prods. & Equip. Co. v. Commissioner,* 78 T.C. 1029, 1044 (1982). Accordingly, the Commissioner's interpretation of the "clear reflection standard [of section 446(b)] 'should not be interfered with unless clearly unlawful.'" *Thor Power Tool Co. v. Commissioner,* 439 U.S. 522, 532 (1979) (quoting *Lucas v. American Code Co.,* 280 U.S. 445, 449 (1930)). The taxpayer bears "a 'heavy burden of [proof],'" and the Commissioner's determination "is not to be set aside unless shown to be 'plainly arbitrary.'" *Id.* at 532–533 (quoting *Lucas v. Kansas City Structural Steel Co.,* 281

---

[2] Respondent does not contend that sec. 460 requires petitioner to use the percentage of completion method. As we read the record in the instant case, petitioner qualifies as a small contractor under sec. 460(e)(1)(B) and is not subject to the requirements of sec. 460(a).

U.S. 264, 271 (1930)). Moreover, in *Ford Motor Co. v. Commissioner,* 102 T.C. 87, 99 (1994), we stated:

> The provisions of section 446 make it clear that a taxpayer's ability to use one or more of the methods of accounting listed in section 446(c) is contingent upon the satisfaction of subsections (a) and (b). The statute does not limit the Commissioner's discretion under section 446(b) by the taxpayer's mere compliance with the methods of accounting generally permitted under section 446(c). * * *

Although the Commissioner's determination that a taxpayer's method of accounting does not clearly reflect its income is given great deference by this Court, we have held that the Commissioner cannot require a taxpayer to change from an accounting method which clearly reflects its income to an alternate method of accounting merely because the Commissioner considers the alternate method to more clearly reflect the taxpayer's income. *Molsen v. Commissioner,* 85 T.C. 485, 498 (1985); *Peninsula Steel Prods. & Equip. Co. v. Commissioner, supra* at 1045; *Bay State Gas Co. v. Commissioner,* 75 T.C. 410, 422 (1980), affd. 689 F.2d 1 (1st Cir. 1982).

The issue of whether the taxpayer's method of accounting clearly reflects income is a question of fact to be determined on a case-by-case basis. See *Pacific Enters. v. Commissioner,* 101 T.C. 1, 13 (1993); *RLC Indus. Co. v. Commissioner, supra* at 489; *Hamilton Indus., Inc. v. Commissioner,* 97 T.C. 120, 128–129 (1991); *RECO Indus., Inc. v. Commissioner, supra* at 920; *Peninsula Steel Prods. & Equip. Co. v. Commissioner, supra* at 1045; *Sam W. Emerson Co. v. Commissioner,* 37 T.C. 1063, 1067 (1962). In reviewing the Commissioner's determination that the taxpayer's method of accounting does not clearly reflect income, the function of the Court is to determine whether there is an adequate basis in law for the Commissioner's conclusion. *RCA Corp. v. United States,* 664 F.2d 881, 886 (2d Cir. 1981). Consequently, to prevail, a taxpayer must prove that the Commissioner's determination is arbitrary and capricious and without sound basis in fact or law. *Ford Motor Co. v. Commissioner, supra* at 92.

At the outset, we note that our task of deciding whether respondent's determination is an abuse of discretion under section 446(b) must be undertaken in light of the enactment of section 448 by Congress during 1986. Section 448 was enacted as part of section 801 of the Tax Reform Act of 1986,

Pub. L. 99–514, 100 Stat. 2345, which in pertinent part provides:

SEC. 448. LIMITATION ON USE OF CASH METHOD OF ACCOUNTING.

(a) GENERAL RULE.—Except as otherwise provided in this section, in the case of a—

(1) C corporation,

(2) partnership which has a C corporation as partner, or

(3) tax shelter,

taxable income shall not be computed under the cash receipts and disbursements method of accounting.

(b) EXCEPTIONS.—

\* \* \* \* \* \* \*

(3) ENTITIES WITH GROSS RECEIPTS OF NOT MORE THAN $5,000,000.—Paragraphs (1) and (2) of subsection (a) shall not apply to any corporation or partnership for any taxable year if, for all prior taxable years beginning after December 31, 1985, such entity (or any predecessor) met the $5,000,000 gross receipts test of subsection (c).

(c) $5,000,000 GROSS RECEIPTS TEST.—For purposes of this section—

(1) IN GENERAL.—A corporation or partnership meets the $5,000,000 gross receipts test of this subsection for any prior taxable year if the average annual gross receipts of such entity for the 3-taxable-year period ending with such prior taxable year does not exceed $5,000,000.

As stated above, the parties stipulated that petitioner's average annual gross receipts for its taxable years 1987, 1988, and 1989 was $2,394,510.60. The parties agree that petitioner meets the requirements of section 448(b)(3) and is not subject to the general rule of section 448(a).[3]

Congress stated that the reason it enacted section 448 was its concern that the use of the cash method by certain taxpayers resulted in a distortion in the amount of taxable income reported by such taxpayers. The committee report, in pertinent part, states:

The committee believes that the cash method of accounting frequently fails to reflect accurately the economic results of a taxpayer's trade or business over a taxable year. The cash method of accounting recognizes items of income and expense based on the taxable year in which funds are received or disbursed. This may result in the recognition of income and expense items without regard to the taxable year in which the economic events giving rise to the items occurred and, therefore, generally is not in

---

[3] Respondent, on brief, states: "the parties agree that petitioner has consistently relied upon the cash method of accounting and that the cash method of accounting would be permissible, here, under section 448, absent a distortion of income." Petitioner, however, contends that the cash method does not distort its income.

accord with generally accepted accounting principles. The cash method also produces a mismatching of income and deductions when all parties to a transaction use different methods of accounting. [H. Rept. 99–426, at 605 (1985), 1986–3 C.B. (Vol. 2) 1, 605.]

Despite Congress' concern, it decided that certain "small businesses" should be allowed to continue to use the cash method to report their income for tax purposes. Congress gave the following reason for providing an exception for small businesses:

On the other hand, the committee recognizes that the cash method generally is a simpler method of accounting and that simplicity justifies its continued use by certain types of taxpayers and for certain types of activities. The committee believes that small businesses should be allowed to continue to use the cash method of accounting in order to avoid the higher costs of compliance which will result if they are forced to switch from the cash method. * * *

* * * * * * *

The committee bill allows the continued use of the cash method of accounting by taxpayers with average annual gross receipts of $5 million or less that are allowed to use the cash method of accounting under present law. * * *

[*Id.* at 605–606, 1986–3 C.B. (Vol. 2) at 605–606.]

The legislative history of section 448 also states:

The committee bill does not change the rules of present law relating to what accounting methods clearly reflect income or the authority of the Secretary of the Treasury to require the use of an accounting method that clearly reflects income. [*Id.* at 606, 1986–3 C.B. (Vol. 2) at 606.]

The Commissioner interpreted the impact of section 448 on section 446(b) in section 1.448–1T(c), Temporary Income Tax Regs., 52 Fed. Reg. 22764 (June 16, 1987), which, in pertinent part, provides:

(c) *Effect of section 448 on other provisions.* Nothing in section 448 shall have any effect on the application of any other provision of law that would otherwise limit the use of the cash method, and no inference shall be drawn from section 448 with respect to the application of any such provision. * * * Similarly, nothing in section 448 affects the authority of the Commissioner under section 446(b) to require the use of an accounting method that clearly reflects income * * *. For example, a taxpayer using the cash method may be required to change to an accrual method of accounting under section 446(b) because such method clearly reflects that taxpayer's income * * *

Against the foregoing backdrop, we must consider whether petitioner's use of the cash method clearly reflects its income. We have stated that "By definition, the cash method may result in mismatching between expenses and income where expenses are paid in a year prior to the receipt of the related income." *RLC Indus. Co. v. Commissioner,* 98 T.C. at 493 n.29. In *RLC Indus. Co.,* we rejected the Commissioner's contention that the clear reflection of income standard of section 446(b) requires "'as much accuracy as standard methods of accounting permit,'" *id.* at 493 (quoting *Caldwell v. Commissioner,* 202 F.2d 112, 114 (2d Cir. 1953)), and stated that the Commissioner's contention "would, if carried to its logical conclusion, prohibit the cash method of accounting for tax purposes", *id.* We noted that although the cash method of accounting generally is not permitted for purposes of financial reporting, it has been permitted for tax purposes. *Id.*

In *Van Raden v. Commissioner,* 71 T.C. 1083, 1104 (1979), affd. 650 F.2d 1046 (9th Cir. 1981), as to the cash method of accounting, we stated the following:

> The cash method of accounting will usually result in some distortion of income because the benefits derived from payments for expenses or materials extend to varying degrees into more than one annual accounting period. If the cash method is consistently utilized and no attempt is made to unreasonably prepay expenses or purchase supplies in advance, the distortion is not material and over a period of years the distortions will tend to cancel out each other.[4] * * *

In *Magnon v. Commissioner,* 73 T.C. 980 (1980), a case which contains facts similar to those of the instant case, the Commissioner determined that the taxpayer's use of the cash method to report income and expenses from its construction contracts was improper, and instead, required the taxpayer to compute its income and expenses using the percentage of completion method. The taxpayer argued that the Commissioner's accounting adjustments were erroneous. We stated as follows:

> Respondent appears to be primarily concerned that * * * [the taxpayer's] use of the cash method herein has resulted in a distortion of its income since the corporation did not receive or report various amounts due

---

[4]The above statements were made before the enactment of sec. 448, which prohibits the use of the cash method by certain taxpayers.

under some long-term contracts until after the year during which construction on a project was completed and the expenses incident thereto were recorded. However, the respondent has failed to make an express determination under section 446 that * * * [the taxpayer's] cash method of accounting for its construction contracts did not clearly reflect such income. *Moreover, even if the respondent had made such a determination, there is no evidence in the record that the cash method used by * * * [the taxpayer] did not clearly reflect its income.*

The cash method of accounting has been widely used throughout the contracting industry and accepted by the respondent since time immemorial. Congress has given consideration to the problem of distortion of income which results from use of the cash method due to the mismatching of income and expenses under that method. S. Rept. 94–938 (1976), 1976–3 C.B. (Vol. 3) 112. In this report which deals with the deductibility of production costs in the film industry, the Senate Finance Committee cites *C. A. Hunt Engineering Co. v. Commissioner,* T.C. Memo. 1956–248, a decision of this Court involving a construction corporation on the cash method that is directly on point with respect to the issue herein. S. Rept. 94–938, *supra,* 1976–3 C.B. (Vol. 3) at 113.

[*Id.* at 1004–1005; emphasis added.]

When it enacted section 448, Congress revisited the problem of the inherent mismatching that frequently results from the use of the cash method. As we interpret section 448, Congress did not intend to change the existing law for businesses that meet the $5 million gross receipts test of section 448(c).

In light of the fact that section 448 does not require petitioner to abandon the cash method and that petitioner is not required by section 460 to report its income on the percentage of completion method, we conclude that respondent's determination requiring that petitioner change its method of accounting constitutes an abuse of discretion. In reaching this conclusion, several factors weigh heavily in support of petitioner: Petitioner did not maintain an inventory, petitioner consistently used the cash method since its incorporation, and petitioner made no attempt to unreasonably prepay expenses or defer the recognition of income.

Respondent, relying on *Wilkinson-Beane, Inc. v. Commissioner,* 420 F.2d 352 (1st Cir. 1970), affg. T.C. Memo. 1969–79, and its progeny, contends that a taxpayer who uses the cash method to report its income must, in all instances, be able to show a substantial identity of results between the cash method and the method of accounting the Commissioner determines clearly reflects the taxpayer's income, in order to show an abuse of discretion by the Commissioner. We dis-

agree. In *J.P. Sheahan Associates, Inc. v. Commissioner,* T.C. Memo. 1992–239, we held that the taxpayer was required to utilize the inventory method of accounting and described the origin and application of the substantial-identity-of-results test as follows:

Generally, where a taxpayer has been required to maintain inventories or has not argued that it was under no obligation to do so, it has been held that the taxpayer must use the accrual method of accounting in accordance with the mandate of section 1.446–1(c)(2)(i), Income Tax Regs., * * * .[5] In the process of reaching this conclusion, the courts have developed, in the context of accounting for inventory, a substantial-identity-of-results test for determining whether respondent has abused her discretion in not affording the taxpayer the opportunity to continue to use the cash method of accounting under section 1.446–1(c)(2)(ii), Income Tax Regs., * * *.[6] The substantial-identity-of-results test was first articulated in *Wilkinson-Beane, Inc. v. Commissioner,* 420 F.2d at 356, and more recently applied by the Court of Appeals for the Sixth Circuit * * * in *Asphalt Products Co. v. Commissioner, supra.* See also *Ralston Development Corp. v. United States,* 937 F.2d 510, 514 (10th Cir. 1991); *American Fletcher Corp. v. United States,* 832 F.2d 436, 440 (7th Cir. 1987); *Surtronics, Inc. v. Commissioner,* T.C. Memo. 1985–277.

In *J.P. Sheahan Associates,* the taxpayer also challenged the interpretation of the word "clearly" in the phrase "clearly reflect income" set forth in *Asphalt Prods. Co. v. Commissioner,* 796 F.2d 843 (6th Cir. 1986), affg. in part and revg. in part *Akers v. Commissioner,* T.C. Memo. 1984–208, revd. on another issue 482 U.S. 117 (1987). The taxpayer argued that "clearly" was synonymous with "accurately".[7] In response to that argument, we stated the following:

---

[5] Sec. 1.446–1(c)(2)(i), Income Tax Regs., provides:

(2) *Special rules.* (i) In any case in which it is necessary to use an inventory the accrual method of accounting must be used with regard to purchases and sales unless otherwise authorized under subdivision (ii) of this subparagraph.

[6] Sec. 1.446–1(c)(2)(ii), Income Tax Regs., in pertinent part, provides:

(ii) * * * the Commissioner may authorize a taxpayer to continue the use of a method of accounting consistently used by the taxpayer, even though not specifically authorized by the regulations in this part, if, in the opinion of the Commissioner, income is clearly reflected by the use of such method. See section 446(a) and paragraph (a) of this section, which require that taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books, and section 446(e) and paragraph (e) of this section, which require the prior approval of the Commissioner in the case of changes in accounting method.

[7] In reaching its holding in *Asphalt Prods. Co. v. Commissioner,* 796 F.2d 843, 849 (6th Cir. 1989), affg. in part and revg. in part *Akers v. Commissioner,* T.C. Memo. 1984–208, revd. on another issue 482 U.S. 117 (1987), the Court of Appeals for the Sixth Circuit relied on *Caldwell v. Commissioner,* 202 F.2d 112 (2d Cir. 1953). In *Caldwell,* as in *Asphalt Products,* the Court of Appeals for the Second Circuit held that the taxpayer was required to utilize the inventory

we [do not] agree with petitioner that equating "substantial identity of results" with "accurately" will result in depriving any taxpayer *who is required to use the inventory method* from ever using the cash method of accounting. In so arguing petitioner ignores the fact that "substantial identity of results" does not require total precision or identity of results. See *Drazen v. Commissioner,* 34 T.C. 1070, 1077–1078 (1960). * * * [*J.P. Sheahan Associates v. Commissioner,* T.C. Memo. 1992–239; emphasis added.]

The cases cited in the foregoing excerpts from *J.P. Sheahan Associates* make it clear that a taxpayer that is required to use the inventory method of accounting must meet the substantial-identity-of-results test in order to show that the Commissioner's determination requiring a change in its method of accounting was an abuse of discretion. See also *Knight-Ridder Newspapers v. United States,* 743 F.2d at 789, 791–793. Respondent's contention that we must apply the substantial-identity-of-results test in cases where the taxpayer is not required to maintain an inventory is without support in the case law. In light of all the facts and circumstances, including the fact that petitioner is a "small" contractor within the exceptions of sections 448 and 460, and that petitioner is not required to maintain an inventory, we conclude that application of the substantial-identity-of-results test to petitioner is unwarranted. Based on the foregoing, we hold that respondent's determination that petitioner must change the method of reporting its income to the percentage of completion method is an abuse of discretion.

To reflect the foregoing,

*Decision will be entered for petitioner.*

---

method of accounting. In reaching its holding in *Caldwell,* the Court of Appeals rejected the taxpayer's argument that the phrase "clearly reflect the income" meant only that a taxpayer was required to keep its books "fairly and honestly". The Court of Appeals stated that the phrase "clearly reflect the income" meant "that income should be reflected with as much accuracy as standard methods of accounting practice permit." As we stated in *RLC Indus. Co. v. Commissioner,* 98 T.C. 457, 493 (1992), "The standard of the *Caldwell* case would, if carried to its logical conclusion, prohibit the cash method of accounting for tax purposes".