T.C. Memo. 1997-240


UNITED STATES TAX COURT


GALEDRIGE CONSTRUCTION, INC., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 21463-94.                    Filed May 22, 1997.


P, an asphalt paving contractor, did not account for
inventories and kept its books and filed its returns on the
cash receipts and disbursements method of accounting.  R
determined that the sale of merchandise was an income-
producing factor in P's business, that P must, pursuant to
sec. 1.471-1, Income Tax Regs., account for inventories, and
that P must use the accrual method of accounting to clearly
reflect income.

Held: Emulsified asphalt, which becomes useless in less
than 5 hours, is not merchandise held for sale by P.  Held,
further, P has no inventories; thus, sec. 1.471-1, Income
Tax Regs., does not apply to P for the taxable years at
issue.  Held, further, P's method of accounting clearly
reflects income; R abused her discretion in requiring P to
use the accrual method of accounting.

John P. McDonnell, for petitioner.

Ronald G. Dong, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

PARR, Judge:  Respondent determined deficiencies in petitioner's Federal income tax for taxable years 1989 and 1990 of $111,613 and $775, respectively.  Respondent also determined a section 6661 addition to petitioner's tax of $27,903 for taxable year 1989.  All section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.  All dollar amounts are rounded to the nearest dollar.

The issue for decision is:  Whether respondent's determination that petitioner must account for inventories and use the accrual method of accounting (accrual method) was an abuse of discretion where petitioner accounted for the materials consumed in its service business as supplies.  We hold it was.[1]

FINDINGS OF FACT

Some of the facts have been stipulated.  The stipulated facts and the accompanying exhibits are incorporated into our

---

[1]  Due to our finding that petitioner is not required to use an inventory method of accounting, and that respondent abused her discretion in requiring petitioner to change its method of accounting, we need not address the issue of whether petitioner is liable for an addition to tax or penalty for a substantial understatement of income tax.

findings by this reference. At the time the petition in this case was filed, petitioner's principal place of business was located in Alviso, California. Petitioner keeps its books and records on the cash method and has always done so. It files its Federal income tax return using a fiscal year ending June 30.

Petitioner is a corporation engaged in the business of asphalt paving and related services. Potential customers contact petitioner, asking for an estimate to perform asphalt paving work. Petitioner sends an estimator to examine the area to be paved, to measure it, and to determine the approximate amount of asphalt needed for the job. The estimator also considers the equipment, number of workers, and time required to complete the job. Two jobs could require the same amount of asphalt but have different costs. For instance, it requires more time, and possibly different equipment, to pave a parking lot with structures on it than a wide-open parking lot.

The estimator prepares a "proposed worksheet", which indicates all the factors involved in estimating a bid price for a job. During the years in issue, the proposed worksheet had three cost columns: Equipment, labor, and materials. The equipment column had spaces to enter a description of the equipment required, the hours required, and the hourly cost of the equipment. The labor column had spaces to enter the laborers' names, the hours required, and the hourly cost of each laborer. Finally, the materials column had spaces for the

quantity of asphalt required, the source of the asphalt, and the unit rate of the asphalt charged by the supplier. Using his or her best judgment, the estimator filled in the equipment and labor columns. To fill in the materials column, the estimator called an asphalt supplier to determine the unit rate for the asphalt. This rate was then entered into the materials column; petitioner did not increase the estimated cost of the asphalt. After each column was completed, the column totals were summed and combined to arrive at a total direct expense. The total direct expense was then increased by either 20 or 25 percent to recover overhead expenses and to make a profit on the job.

The proposal sent to the customer contained a lump-sum bid; it did not break out the various costs making up the bid. Petitioner used two or three asphalt suppliers during the years at issue and generally would not adjust its bids to compete with an opposing paving contractor. If accepted, the proposal formed the basis of the contract between petitioner and the customer.[2]

Once the contract was signed, petitioner obtained the asphalt to be used in the paving job. Petitioner never acquired asphalt from a supplier without a signed contract with a customer.

---

[2] When a job exceeded the scope of the original contract, petitioner charged the customer on a time and materials basis. The record is sparse with respect to the specific computation of the time and materials charge. In any event, it appears that this type of charge was uncommon.

In performing its contracts, petitioner took delivery of the materials directly from the asphalt supplier. Petitioner's driver picked up the asphalt and took it directly to the job site. The asphalt had to be laid within 2 to 5 hours from the time it was picked up from the plant, or it would become rock hard and have to be thrown away. Petitioner had no way to extend the time that asphalt is in an emulsified condition. Once the asphalt hardened, it could not be melted and reused; nor could it be returned for credit to the asphalt supplier.

Petitioner generally worked on only one job at a time, lasting a week or less. When the job was finished, petitioner billed the customer and created an accounts receivable on its books. The asphalt company sent petitioner an invoice, usually due within 30 days, which petitioner paid only after it received payment from its customer. Although petitioner, not the customer, usually paid the supplier, there were some customers who paid the supplier directly for the asphalt used on a job. This was an uncommon event, however, that did not occur during the years at issue. Occasionally, customers issued a joint check to petitioner and the supplier so that, in effect, the customer paid the supplier.

Petitioner's asphalt costs for the tax years 1989 and 1990 were $930,960 and $855,566, respectively. Petitioner deducted the cost of the asphalt as a supplies expense on its tax returns for the years at issue.

OPINION

The principal issue for decision is whether it was an abuse of respondent's discretion to require petitioner to change from the cash method of accounting to the accrual method of accounting.[3]  Subsumed in this issue is the question of whether petitioner should be required to use inventories for tax purposes.[4]

---

[3]    Sec. 446 provides in pertinent part:

SEC. 446(a). General Rule.--Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.

(b) Exceptions.--If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect income.

(c) Permissible Methods.--Subject to the provisions of subsections (a) and (b), a taxpayer may compute taxable income under any of the following methods of accounting--

(1) the cash receipts and disbursements method;

(2) an accrual method;

(3) any other method permitted by this chapter; or

(4) any combination of the foregoing methods permitted under regulations prescribed by the Secretary.

[4]    Sec. 471 provides in pertinent part:

SEC. 471(a). General Rule.--Whenever in the opinion of the Secretary the use of inventories is necessary in order clearly to determine the income of

(continued...)

A taxpayer that has inventories is required to use the accrual method, unless it can show that use of another method (here, the cash method) would produce a substantial identity of results and that the Commissioner's determination requiring a change is an abuse of discretion. Ansley-Sheppard-Burgess Co. v. Commissioner, 104 T.C. 367, 377 (1995); see also Knight-Ridder Newspapers, Inc. v. United States, 743 F.2d 781, 789, 791-793 (11th Cir. 1984); Wilkinson-Beane, Inc. v. Commissioner, 420 F.2d 352 (1st Cir. 1970), affg. T.C. Memo. 1969-79.

A. Merchandise

Respondent determined that during the years in issue petitioner's asphalt was merchandise that was an income-producing factor, that petitioner therefore had inventories, and thus it must use the accrual method of accounting in order to clearly reflect taxable income. Petitioner asserts that it is primarily in the business of providing service; its clients purchase its expertise in paving. Furthermore, petitioner contends that

---

[4](...continued)
any taxpayer, inventories shall be taken by such taxpayer on such basis as the Secretary may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.

By regulation, the Secretary has determined that inventories are necessary if the production, purchase, or sale of merchandise is an income-producing factor. Sec. 1.471-1, Income Tax Regs. Completing the statutory and regulatory scheme, sec. 1.446-1(c)(2)(i), Income Tax Regs., provides that a taxpayer that has inventory must also use the accrual method of accounting with regard to purchases and sales.

respondent has no authority to require it to use an inventory method of accounting when there is nothing on hand at the end of the day to count. Finally, petitioner argues that the asphalt is neither merchandise nor an income-producing factor.

Petitioner deducted the cost of the asphalt as a supplies expense under section 162 and section 1.162-3, Income Tax Regs. Section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". Section 1.162-3, Income Tax Regs., provides in pertinent part:

> Cost of materials.--Taxpayers carrying materials and supplies on hand should include in expenses the charges for materials and supplies only in the amount that they are actually consumed and used in operation during the taxable year for which the return is made, provided that the costs of such materials and supplies have not been deducted in determining the net income or loss or taxable income for any previous year. * * *

The statute and regulations do not define "merchandise" or "inventory", nor do they clearly distinguish between "materials and supplies" that are not actually consumed and remain on hand, and inventory. However, we must decide whether the emulsified asphalt petitioner uses is a supply within the meaning of section 162 or inventory within the meaning of section 471. We begin by acknowledging that the authorities in this area are not easily reconcilable.[5]

---

[5] See Nolan, "Can the Cash Method of Accounting Clearly Reflect Income?" Tax Notes 1063 (Feb. 24, 1997) and 1175 (March (continued...)

At the outset, we note that it is clear that petitioner provides a service to its clients; if its clients wanted only to purchase asphalt, they could have done so by dealing directly with the asphalt supplier.

Previously, we examined certain service transactions to determine whether the transaction in substance involved solely the sale of a service, or whether the transaction involved the sale of a service and merchandise. Wilkinson-Beane, Inc. v. Commissioner, supra (funeral business's caskets are merchandise); Thompson Elec., Inc. v. Commissioner, T.C. Memo. 1995-292 (electrical contractor's wire, conduit, and electrical panels are merchandise); Honeywell Inc. v. Commissioner, T.C. Memo. 1992-453 (taxpayer's "consideration" of cost of rotable parts in determining amount of fixed fee charged customers in maintenance service business does not establish that those parts were acquired and held for sale; held, rotable spare parts are not merchandise), affd. without published opinion 27 F.3d 571 (8th Cir. 1994); J.P. Sheahan Associates, Inc. v. Commissioner, T.C. Memo. 1992-239 (contractor's roofing materials are merchandise); Surtronics, Inc. v. Commissioner, T.C. Memo. 1985-277 (electroplating metals are merchandise). In this case, we must decide whether petitioner is a seller of only a service or a seller of a service and merchandise.

[5](...continued)
3, 1997), and the authorities cited therein.

Petitioner asserts that respondent has no authority to require it to use inventory accounting when there is nothing on hand at the end of the day to count. Petitioner acquired asphalt directly from the supplier, drove to the job site, and poured it within a few hours. Any asphalt not laid within 2 to 5 hours of acquisition hardened and had to be discarded. Thus, hardened-but-unlaid asphalt was worthless for the job for which it was ordered and for any other job.

Petitioner's position has commonsense appeal and some support in law and in industry practice. See Ansley-Sheppard-Burgess Co. v. Commissioner, supra (Commissioner agreed that taxpayer/contractor did not have inventory). Furthermore, until the early 1990's, the Commissioner generally permitted construction contractors to account for construction materials and supplies as supplies, rather than as inventory. See, e.g., id. at 375 ("The cash method of accounting has been widely used throughout the contracting industry and accepted by respondent since time immemorial."); Hunt Engg. Co. v. Commissioner, T.C. Memo. 1956-248 (construction contractor purchasing materials for various jobs as they were needed maintained no inventories; cash method clearly reflected income).

Beginning in the early 1990's, the Commissioner began to require contractors to account for the materials used in construction as merchandise inventory.[6]

In J.P. Sheahan Associates, Inc. v. Commissioner, supra, a roofing company argued that because it ordered materials only on an "as needed" basis (leftover materials were either returned to the supplier for credit or held by the taxpayer at one of its base locations until shipped to a job site), it had no yearend inventory and therefore did not hold merchandise for sale within the meaning of the regulations.  The Court said:

> In so contending, petitioner ignores the fact that the regulations speak in terms of "every case in which the production, purchase, or sale of merchandise is an income-producing factor."  This is the foundation for the determination by respondent, pursuant to section 471, that inventories should be used; the fact that such use may produce a zero or minimal year-end inventory is irrelevant.  [Citations omitted.[7]]

Under J.P. Sheahan Associates, Inc., it is irrelevant whether the taxpayer has merchandise on hand at the end of the year for the determination that it must "utilize the inventory method in computing its taxable income."  Id.  Thus, the fact that petitioner had no emulsified asphalt on hand at the end of

---

[6]     See Nolan, "Can the Cash Method of Accounting Clearly Reflect Income?" Tax Notes 1063 (Feb. 24, 1997).

[7]     In so holding, the Court distinguished as dicta certain language in Asphalt Prods. Co. v. Commissioner, 796 F.2d 843 (6th Cir. 1986), affg. in part and revg. in part Akers v. Commissioner, T.C. Memo. 1984-208.

the day is not dispositive of the issue of whether it must maintain an inventory.

It is equally clear from J.P. Sheahan Associates, Inc., that before the Commissioner may require the taxpayer to utilize an inventory method of accounting, the taxpayer must (1) produce, purchase, or sell merchandise (2) that is an income-producing factor. Thus, to find that inventories are necessary, we must first find as fact that petitioner produces, purchases, or sells merchandise. Honeywell Inc. v. Commissioner, supra. If so, then we must find that the production, purchase, or sale of that merchandise is an "income-producing factor". Wilkinson-Beane, Inc. v. Commissioner, 420 F.2d at 355; Honeywell Inc. v. Commissioner, supra; sec. 1.471-1, Income Tax Regs.

The fact that petitioner had no emulsified asphalt on hand at the end of the day is not dispositive of whether it must use an inventory method of accounting. We think, however, that there is a significant difference between a taxpayer who has no material on hand at the end of the year because it was returned to the supplier for credit, see, e.g., J.P. Sheahan Associates, Inc. v. Commissioner, supra, and a taxpayer who has no material on hand at the end of the day because of the ephemeral quality of the material. Thus, we consider the ephemeral quality of the

emulsified asphalt to be a factor that must be considered in our analysis of whether the emulsified asphalt is "merchandise".[8]

Although not specifically defined in the Internal Revenue Code (the Code) or the regulations, courts have held that "merchandise", as used in section 1.471-1, Income Tax Regs., is an item acquired and held for sale. See, e.g., Wilkinson-Beane, Inc. v. Commissioner, supra at 354-355 (a canvassing of authorities in the accounting field yields several definitions, such as "goods purchased in condition for sale," "goods awaiting sale," "articles of commerce held for sale," and "all classes of commodities held for sale"; the common denominator seems to be that the items in question are merchandise if held for sale); Honeywell Inc. v. Commissioner, T.C. Memo. 1992-453 (rotable spare parts are merchandise if they were acquired and held for sale). Whether an item was acquired and held for sale is governed by the substance of the transaction and not its form. Honeywell Inc. v. Commissioner, supra. Thus, to determine whether an item is "merchandise", we must take into account the particular facts and circumstances of the taxpayer in each case and the manner and context in which the taxpayer operates the

_____

    [8]    In construing the word "merchandise" we apply the rule that "'The natural and ordinary meaning of words will be applied [in construing tax statutes] unless the Congress has definitely indicated an intention that they should be otherwise construed'". Wilkinson-Beane, Inc. v. Commissioner, 420 F.2d 352, 354 (1st Cir. 1970) (quoting Huntington Sec. Corp. v. Busey, 112 F.2d 368, 370 (6th Cir. 1940)), affg. T.C. Memo. 1969-79.

business at hand.  Wilkinson-Beane, Inc. v. Commissioner, supra;
Thompson Elec., Inc. v. Commissioner, T.C. Memo. 1995-292;
Honeywell Inc. v. Commissioner, supra; J.P. Sheahan Associates,
Inc. v. Commissioner, T.C. Memo. 1992-239.

Previously, this Court has held that a manufacturer/supplier
of emulsified asphalt and asphalt products that maintained a
yearend inventory of raw materials must use the accrual method of
accounting, even though it had no finished product inventory at
the end of the year.  Akers v. Commissioner, T.C. Memo. 1984-208,
affd. on this issue and revd. in part sub nom. Asphalt Prods. Co.
v. Commissioner, 796 F.2d 843, 849 (6th Cir. 1986).  In Asphalt
Prods. Co., the taxpayer was in the business of manufacturing
emulsified asphalt from pure asphalt using a chemical treatment
and a physical process.  It maintained an inventory of raw
materials and had a fixed production plant with large tanks in
which it was able to preserve the emulsified condition of its
finished product, and therefore its marketable quality,
indefinitely.[9]  The facts of Asphalt Prods. Co. and the case at

_____

[9]     Very little road contracting work was done by Asphalt
Products in the colder months of December, January, and February.
Asphalt Products generally closed its operations completely in
mid-December, and all of its employees took vacations from mid-
December until early January.  Asphalt Products did not keep any
finished product in its tanks during the 2-week shutdown period.
Akers v. Commissioner, supra.

hand are clearly distinguishable.  Petitioner is in the business of laying emulsified asphalt, not in the business of manufacturing emulsified asphalt.  Petitioner acquires asphalt from a producer of emulsified asphalt, has no yearend (or even dayend) inventory of raw materials, and is unable to prevent or even delay the asphalt from becoming rock hard and worthless within 2 to 5 hours of its acquisition from the supplier.  Thus, Asphalt Prods. Co. is not dispositive of the issue of whether the asphalt is merchandise sold by petitioner.

In Thompson Elec., Inc. v. Commissioner, supra, the taxpayer used materials such as wiring, conduits, electrical panels, and lighting fixtures in its electrical contracting business.  The taxpayer maintained an inventory of unassigned materials on its premises that it used for small contracts, in addition to delivering materials directly from the supplier to its large-contract customers' sites.  The taxpayer reported yearend inventory of $68,617 and $74,876 for taxable years 1988 and 1989, respectively.  We concluded that the material at issue was merchandise which was an income-producing factor even though the taxpayer did not display the material to customers or to the public, the material was not itemized on bids or invoices nor separately charged to the customer, the taxpayer did not sell material separately from its services, and the taxpayer's customers generally did not select the materials to be used.  Thus, the fact that petitioner did not sell emulsified asphalt

separately from its services is not a fact that would preclude asphalt from being merchandise inventory.

The facts of Thompson Elec., Inc., however, are so different from the facts of the instant case that it is not dispositive of the issue of whether asphalt is merchandise. In contrast to the durable quality of the electrical materials that allowed Thompson Electric, Inc., to maintain yearend inventories on its premises, the peculiar physical properties of emulsified asphalt make it impossible for petitioner to have any item to hold for sale at the end of the day at either its clients' sites or its own premises.[10]

The seminal case on the issue of whether material provided in conjunction with the sale of a service is merchandise is Wilkinson-Beane, Inc. v. Commissioner, 420 F.2d 352 (1st Cir. 1970). In Wilkinson-Beane, Inc., the taxpayer was an undertaking establishment that sold caskets as part of its funeral service. In construing the word "merchandise", the court used the ordinary meaning of the word and found that the common denominator in all the definitions was that the items in question are merchandise if they are held for sale. Id. at 354-355. In finding caskets were

---

[10] Similarly, the instant case is factually distinguishable from J.P. Sheahan Associates, Inc. v. Commissioner, T.C. Memo. 1992-239, on the quality of the material used in the performance of the contracts. In J.P. Sheahan Associates, Inc., the record showed that excess roofing materials were either returned to the seller for credit or held for use on another job.

merchandise, the court noted that the taxpayer normally kept an inventory of some 35 caskets, that the caskets were not necessarily used during the year they were purchased and occasionally were carried for long periods of time, and that there was a direct relationship between the magnificence of the caskets and the cost of the service.  Id.

The factors that led the court to conclude in Wilkinson-Beane, Inc. that the caskets were merchandise are not present in the instant case.  Using the ordinary meaning of the word "merchandise", we find that the physical properties of the emulsified asphalt prevent petitioner from holding it for sale. Unlike the taxpayer in Wilkinson-Beane, Inc., who was able to hold a stockpile of 35 caskets through multiple annual accounting periods without diminished utility, the facts in this case show that from the moment it received the emulsified asphalt from the supplier petitioner was joined in a race that had an unalterable predetermined outcome; within 2 to 5 hours the emulsified asphalt would be rock hard and worthless.  Accordingly, under the facts and circumstances of this case, we cannot find that the emulsified asphalt is merchandise.

It is irrelevant that the laid asphalt contained the potential of providing many years of service to its ultimate beneficiary, the owner of the paved surface.  The utility that must be considered is that afforded the service provider working with the material.  If petitioner was victorious in the race and

the asphalt was laid within the brief period that it remained in its emulsified condition, its change of state into a rock hard solid provided utility only to the owner of the paved surface. If, however, petitioner managed no better than to place or show, and all the emulsified asphalt was not laid within 2 to 5 hours of receipt, the unlaid amount would become entirely and irrevocably worthless to everyone. In either event, the utility provided by the material entirely vanished within 2 to 5 hours of its receipt. This peculiar physical property of the emulsified asphalt is a material difference that distinguishes it from the roofing materials, electrical materials, and caskets of the aforementioned cases.

Furthermore, unlike Wilkinson-Beane, Inc., the variable factor in the cost of the service provided by petitioner was the relative complexity of the client's site, and the additional amount of labor and machinery required to lay the asphalt on a more complex site, not the relative "magnificence" of the material. The facts of the instant case are thus distinguishable from those of Wilkinson-Beane, Inc. and its progeny.

In Knight-Ridder Newspapers, Inc. v. United States, 743 F.2d 781, 790 (11th Cir. 1984), the Court of Appeals for the Eleventh Circuit considered the issue of whether the taxpayer, who was in the business of producing and selling newspapers, was required to use an inventory method of accounting. The taxpayer argued that it was in a service business (the business of providing

information for its readership and running advertisements for its clients), and that it was not the type of merchandiser envisioned by the inventory regulations. Id. The court found that even though the taxpayer sold an extremely perishable commodity (a 2-day-old newspaper is stale), and therefore it had virtually no inventories of finished goods, the taxpayer was required to account for inventories because the sale of merchandise was an income-producing factor and there was a significant fluctuation of newsprint and ink on hand, which had a significant effect on taxable income. Id. at 790-791.

The Court of Appeals also stated that in deciding whether a taxpayer must adopt inventories, the size of the account and the fluctuations are relevant. Id. at 791. After discussing the language in section 1.471-1, Income Tax Regs., that requires inventories in "every case in which the * * * sale of merchandise is an income-producing factor", the court said:

> Nevertheless, given that the ultimate goal of the regulation is "to reflect taxable income correctly," id., we hold that purpose is not served where inventories and inventory fluctuations would be de minimis and have virtually no effect on the reflection of income. * * * On the other hand, if either the absolute level of the inventory account or its fluctuation during the year would be substantial, then the taxpayer must use inventories if it meets the other requirements of section 1.471-1. [Id.]

See also Ezo Products v. Commissioner, 37 T.C. 385, 393 (1961).

Similarly, in Asphalt Prods. Co. v. Commissioner, 796 F.2d at 849, the court said, in dicta:

If the temporary and rather insignificant increase in inventories of raw materials had been the only basis for the Commissioner's determination, we would have been inclined to find an abuse of discretion. We do not construe the Code provisions and regulations relating to inventories in the absolute terms adopted by the Commissioner and the Tax Court. * * *

In contrast to the facts of Knight-Ridder Newspapers, Inc., petitioner has no raw materials inventory; thus, there is no fluctuation in either the absolute value or the value relative to taxable income. Furthermore, we are unable to find as a fact that the emulsified asphalt is merchandise. Thus, we find no factual or legal indicators in Knight-Ridder Newspapers, Inc. that lead us to conclude that petitioner must use an inventory method of accounting.

Our analysis of the material at issue, and our finding that under the facts and circumstances of this case the ephemeral quality of the emulsified asphalt bars its inclusion in the class of goods or commodities held for sale as "merchandise", support a conclusion that is different from, but not contrary to, the holdings in Wilkinson-Beane, Inc. and its progeny.

We do not interpret section 1.471-1, Income Tax Regs., to require that if a material is an income-producing factor it must, per se, be "merchandise". The section provides that "inventories * * * are necessary in every case in which the production, purchase, or sale of merchandise is an income-producing factor". Sec. 1.471-1, Income Tax Regs. (emphasis added). Thus, we find that the emulsified asphalt is a supply consumed in the operation

of petitioner's service business, not merchandise.  The expense

of the asphalt is properly deducted under section 162 and the

regulations thereunder.[11]

Since the emulsified asphalt is not merchandise, we do not

reach the question of whether "merchandise is an income-producing

factor" in petitioner's business.

B.  Inventory

In construing the word "inventory" we note that the natural

and ordinary meaning of words will be applied in construing tax

statutes unless the Congress has definitely indicated an

---

[11]    Furthermore, treating the emulsified asphalt as a
supplies expense because it is consumed in providing service to a
client is not a treatment unique to this case.  For instance, the
Commissioner has issued guidance regarding expensing material
consumed in providing service to the taxpayer's customers, see,
e.g., Rev. Rul. 75-407, 1975-2 C.B. 196 (public utility should
continue to deduct the cost of fuel actually consumed and used to
generate electricity distributed during its taxable year), and
for expensing materials consumed in operation of a taxpayer's
business, see, e.g., Rev. Rul. 90-65, 1990-2 C.B. 41 (the cost of
unrecovered platinum from prills used in refining petroleum is a
material or supply expense allowed under sec. 1.162-3, Income Tax
Regs., during period prills are in use; the expense is then
required to be capitalized as provided under sec. 263A).
    In addition, provided the taxpayer can verify the amount of
the expense, the Commissioner has allowed deductions for supplies
transferred to clients in the operation of taxpayer's service
business.  See, e.g., Tomsykoski v. Commissioner, T.C. Memo.
1974-105 (drugs and supplies provided free of charge to
patients).
    Finally, this Court has held that supplies consumed in the
provision of a service are not subject to sec. 1.471-1, Income
Tax Regs.  See, e.g., Smith Leasing Co. v. Commissioner, 43 T.C.
37, 40-41 (1964) (truck leasing company allowed to charge cost of
gasoline, tires and tubes, and replacement parts directly to
expense).

intention that they should be otherwise construed.[12]  See supra note 8.  Inventory is, simply stated, property that is held for sale.  Grant Oil Tool Co. v. United States, 108 Ct. Cl. 620, 381 F.2d 389, 397 (1967).

We have found that the emulsified asphalt is not merchandise held for sale by petitioner in the operation of petitioner's service business, and that petitioner does not keep any raw materials or finished goods on hand.  Previously, the Court of Appeals for the Second Circuit considered the fact that the taxpayer had no stock or merchandise on hand and no warehouse or storeroom for merchandise, and that goods were delivered directly from the manufacturer to the customer, to be conclusive in finding that the taxpayer did not maintain inventories.  See Simon v. Commissioner, 176 F.2d 230, 232 (2d Cir. 1949) (buyer

---

[12]    "Inventory" is defined in The Random House College Dictionary (1982) as:
    1. a detailed, often descriptive, list of articles, giving the code number, quantity, and value of each; catalog. * * * 3. a complete listing of merchandise or stock on hand, raw materials, etc., made each year by a business concern.  4. the objects or items represented on such a list, as a merchant's stock of goods.  5. their aggregate value.
    Similarly, "inventory" is defined in Webster's Second New International Dictionary (1957) as:
    1. an account, catalog, or schedule, made by an executor or administrator, of all the goods and chattels, and sometimes of the real estate, of a deceased person; a list of the property of a person or estate; hence an itemized list of goods or valuables, with their estimated worth; specif., the annual account of stock taken in any business; * * * 2. Inventoriable goods, hence stock of such; * * * .

and seller of paper box-board maintained no inventory, was not engaged in business of "merchandising" requiring use of accrual method in computing income for Federal income tax purposes).[13] If petitioner made "a complete listing of merchandise or stock on hand, raw materials, etc.", either at the beginning or end of any day, there could be nothing to list; thus, the amount and value of petitioner's opening and closing inventory would always be zero.[14]  Therefore, we hold that petitioner does not maintain inventories.

C.  Accrual Method of Accounting

Petitioner used the cash receipts and disbursements method of accounting (cash method) to report its income for the taxable

----

[13]    Interpreting the requirements of Reg. 111, sec. 29.22(c)-1.  For the taxable year before the court, Reg. 111, sec. 29.22(c)-1 provided:

Need of Inventories.--In order to reflect the net income correctly, inventories at the beginning and end of each taxable year are necessary in every case in which the production, purchase, or sale of merchandise is an income-producing factor. * * * Merchandise should be included in the inventory only if title thereto is vested in the taxpayer.  Accordingly, the seller should include in his inventory goods under contract for sale but not yet segregated and applied to the contract and goods out upon consignment, but should exclude from inventory goods sold (including containers), title to which has passed to the purchaser.  A purchaser should include in inventory merchandise purchased (including containers), title to which has passed to him, although such merchandise is in transit or for other reasons not been reduced to physical possession, but should not include goods ordered for future delivery, transfer of title to which has not yet been effected.

[14]    Although cognizant of this fact, respondent proposes to require petitioner to use an inventory method of accounting "as if" petitioner had merchandise or stock on hand.

years at issue. Respondent determined that petitioner had inventories and therefore was required to use the accrual method of accounting. We have found that petitioner has no merchandise inventories; however, our finding does not preclude the possibility that petitioner may be required to use the method of accounting selected by respondent in order to clearly reflect income.

The issue we must decide is whether respondent's determination that petitioner must report its income on the accrual method of accounting constitutes an abuse of discretion. The Commissioner is granted broad discretion in determining whether a taxpayer's use of an accounting method clearly reflects income. Sec. 446(b); United States v. Catto, 384 U.S. 102, 114 & n.22 (1966), rehearing denied 384 U.S. 981 (1966); Commissioner v. Hansen, 360 U.S. 446, 468 & n.12 (1959); Lucas v. American Code Co., 280 U.S. 445, 449 (1930). No method of accounting is acceptable unless, in the opinion of the Commissioner, it clearly reflects income. Sec. 1.446-1(a)(2), Income Tax Regs. Thus, a prerequisite to the Commissioner's requirement that a taxpayer change its present method of accounting is a determination that the method used by the taxpayer does not clearly reflect income. Sec. 446(b); Hallmark Cards, Inc. v. Commissioner, 90 T.C. 26, 31 (1988).

Whether an abuse of discretion has occurred depends on whether the Commissioner's determination is without sound basis in fact or law. Ansley-Sheppard-Burgess Co. v. Commissioner, 104

T.C. at 371; Ford Motor Co. v. Commissioner, 102 T.C. 87, 91-92 (1994), affd. 71 F.3d 209 (6th Cir. 1995); see Cole v. Commissioner, 586 F.2d 747, 749 (9th Cir. 1981), affg. 64 T.C. 1091 (1975). The reviewing court's task is not to determine whether, in its own opinion, the taxpayer's method of accounting clearly reflects income but to determine whether there is an adequate basis in law for the Commissioner's conclusion that it does not. Ansley-Sheppard-Burgess Co. v. Commissioner, supra at 371; Hospital Corp. of Am. v. Commissioner, T.C. Memo. 1996-105. Consequently, section 446 imposes a heavy burden on the taxpayer disputing the Commissioner's determination on accounting matters. Thor Power Tool Co. v. Commissioner, 439 U.S. 522, 532-533 (1979). To prevail, a taxpayer must establish that the Commissioner's determination is "clearly unlawful" or "plainly arbitrary". Id. However, if the taxpayer's method of accounting is specifically authorized by the Code or the regulations thereunder and has been applied on a consistent basis, the Commissioner is ordinarily not permitted to reject the taxpayer's method, as not providing a clear reflection of income, and require the use of another method. Hallmark Cards, Inc. v. Commissioner, supra at 31; Peninsula Steel Prods. & Equip. Co. v. Commissioner, 78 T.C. 1029, 1050 (1982). Furthermore, this Court has held that the Commissioner cannot require a taxpayer to change from an accounting method which clearly reflects income to an alternate method of accounting merely because the Commissioner considers the alternate method to more clearly reflect the

taxpayer's income.  <u>Molsen v. Commissioner</u>, 85 T.C. 485, 498 (1985); <u>Peninsula Steel Prods. & Equip. Co. v. Commissioner</u>, <u>supra</u> at 1045; <u>Bay State Gas Co. v. Commissioner</u>, 75 T.C. 410, 422 (1980), affd. 689 F.2d 1 (1st Cir. 1982).

Section 446 specifically authorizes a taxpayer to use the cash receipts and disbursements method of accounting (cash method) to compute taxable income, provided it is the method of accounting the taxpayer regularly uses to compute his income in keeping his books, and it clearly reflects income.  Sec. 446(a), (b) and (c)(1).

Generally, under the cash method of accounting, an item of income or expense is reported when received or paid without regard to the economic events giving rise to the item.  On the other hand, under the accrual method of accounting, an item of income or expense generally is reported for the accounting period during which all the events have occurred which fix the taxpayer's right to receive the item of income or which establish the fact of liability giving rise to the deduction, and the amount thereof can be determined with reasonable accuracy. <u>Hallmark Cards, Inc. v. Commissioner</u>, <u>supra</u> at 32; secs. 1.446-1(c)(1)(ii), 1.451-1(a), Income Tax Regs.  Thus, each method properly applied to the same facts may yield different results.

This Court is aware that "By definition, the cash method may result in mismatching between expenses and income where expenses are paid in a year prior to the receipt of the related income." <u>RLC Indus. Co. v. Commissioner</u>, 98 T.C. 457, 493 n.29 (1992),

affd. 58 F.3d 413 (9th Cir. 1995). However, mismatches between expenses and income will over time tend to cancel out provided no attempt is made to unreasonably prepay expenses or purchase supplies in advance. Van Raden v. Commissioner, 71 T.C. 1083, 1104 (1979), affd. 650 F.2d 1046 (9th Cir. 1981). Respondent did not contend that petitioner attempted to unreasonably prepay expenses or purchase supplies in advance. In fact, petitioner paid its suppliers only after receiving payment from its clients.[15] Therefore, in this case, income and expenses were not mismatched.[16]

Furthermore, respondent's determination that petitioner's use of the accrual method of accounting would increase its income tax liability for taxable years 1989 and 1990 by $111,613 and $775, respectively, is not, per se, indicative that petitioner's use of the cash method failed to clearly reflect income. RLC

---

[15] Petitioner is billed by the asphalt supplier, and that invoice is due within 30 days. When a job is complete, petitioner bills its client and creates an account receivable. Petitioner pays the invoice when the client pays petitioner. Thus, we can conclude that if petitioner pays its supplier's invoices on time, then petitioner receives payment from its customers within 30 days of completing the paving job.

[16] The accrual method requires a taxpayer to recognize income in the taxable year when all the events have occurred that fix the right to receive the income and the amount can be determined with reasonable accuracy (the "all-events test"), secs. 1.446-1(c)(1)(ii)(A), 1.451-1(a), Income Tax Regs., rather than when the taxpayer actually receives payment. Accordingly, under the accrual method petitioner would be required to recognize income when petitioner completes each paving job; i.e., approximately 30 days earlier than when it recognizes income under the cash method.

Indus. Co. v. Commissioner, supra at 503.  The best method is not necessarily the one that produces the most tax in a particular year.  Id.

Respondent's final argument is that if petitioner is to establish that respondent has abused her discretion, petitioner must demonstrate substantially identical results between petitioner's method and the method selected by respondent.  We disagree.  We have found that petitioner does not have any inventories.  Respondent's contention that we must apply the substantial-identity-of-results test[17] in cases where the taxpayer is not required to maintain an inventory is without support in the case law.  Ansley-Sheppard-Burgess Co. v.

---

[17] The substantial-identity-of-results test is a judicial creation; the test was first articulated in Wilkinson-Beane, Inc. v. Commissioner, 420 F.2d 352 (1st Cir. 1970).  In that case, a cash-method taxpayer who was required to maintain an inventory and thus report income on the accrual basis argued that the difference in income determined by the method it used and the method selected by the Commissioner was negligible. The court found that where the Commissioner has determined that the accounting method used by a taxpayer does not clearly reflect income, in order to prevail, "the taxpayer must demonstrate substantial identity of results between his method and the method selected by the Commissioner."  Id. at 356.

In Ansley-Sheppard-Burgess Co. v. Commissioner, 104 T.C. 367, 377 (1995), we held that a taxpayer that is required to use the inventory method of accounting must meet the substantial-identity-of-results test in order to show that the Commissioner's determination requiring it to change from the cash method to the accrual method of accounting was an abuse of discretion. However, respondent's contention that we must apply the substantial-identity-of-results test in cases where the taxpayer is not required to use an inventory is without support in case law.  Id.

Commissioner, 104 T.C. at 377; Austin v. Commissioner, T.C. Memo. 1997-157.  Thus, petitioner is not required to show a substantial identity of results for this Court to find that respondent abused her discretion in changing petitioner's method of accounting.

Respondent required petitioner to change from an accounting method which clearly reflects income to an alternate method of accounting merely because respondent considers the alternate method to more clearly reflect its income.  We previously have held that to do so exceeds the bounds of her discretion.

On the basis of the facts of the instant case--including the fact that petitioner has consistently used the cash method of accounting without any evidence that it attempted to prepay expenses unreasonably or purchase supplies in advance, does not have inventories and is not required to use an inventory method of accounting, and is not otherwise required by the Code or regulations to use the accrual method of accounting--we hold that respondent's determination that petitioner's use of the cash method of accounting did not produce a clear reflection of income was an abuse of discretion.

To reflect the foregoing,

Decision will be entered

for petitioner.